BYRD, Plaintiff in error, v. STATE, Defendant in error.

*No. State 113. Argued September 10, 1974.—Decided October 31, 1974.*

(Also reported in 222 N. W. 2d 696.)

416

418

For the plaintiff in error there were briefs by *Howard B. Eisenberg,* state public defender, and *Ruth S. Downs,* assistant state public defender, and oral argument by *Ms. Downs.*

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

DAY, J. The first question, whether the defendant has a right to challenge the fornication statute as an unconstitutional invasion of privacy, is disposed of by the holding of this court in *Jones v. State* (1972), 55 Wis. 2d 742, 200 N. W. 2d 587. In that case, this court held that one convicted of sodomy under sec. 944.17 (1), Stats., could not raise the constitutional defense of overbreadth by alleging it would cover private consensual acts of married persons where the acts in question had been forced on another by the defendant. This court said, page 748:

"Certainly the state has a legitimate interest in prohibiting heinous acts like those perpetrated by the defendant in this case. His conduct was not . . . consensual . . . ; on the contrary, it was . . . accomplished, not with a consenting spouse but forced upon a victim . . . who was unable to escape from the defendant's physical violence and demands. There is no constitutional protection for the revolting conduct of the defendant . . . the hypothetical he raises [consensual acts by married persons] has no reasonable relation to his conduct or the purpose of the statute. It can hardly be said the defendant . . . has any real or concrete interest in the vindication of the rights of privacy of married couples and he should not be allowed to use a reference to such rights to escape a conviction for his criminal acts."

This court pointed out, page 747:

"The test for overbreadth is whether the substantive limits of the statute sweep so broadly as to prohibit or discourage conduct protected by the constitution. The rights protected are usually found in the penumbras of the first and ninth amendments of the United States Constitution. . . ."

The defendant challenges the fornication statute as being an unconstitutional invasion of the right of privacy of individuals when intercourse occurs between consenting adults.

In the case at bar, the act of intercourse was not consensual by any stretch of the imagination. The victim testified repeatedly that the reason she submitted was because the defendant "told me he had a weapon and I did not want him to use it on me." She testified she earlier screamed three or four times and was crying. She testified she was shocked and afraid when defendant forced his way into her car, and the record shows she tried unsuccessfully to escape. Counsel for the defendant says that since the court did not find the defendant guilty of rape, it follows that the intercourse had not occurred by force or against the victim's will, implying thereby that she consented. The trial judge, after stating for the record what instruction he would have given a jury on what constituted rape, said: "I'm not satisfied from my analysis of the evidence presented that the State has under the law applicable met its burden of proof to the quantum required, and that is beyond a reasonable doubt, and it would be simply rhetorical to say I am morally convinced that the defendant committed the act [rape] . . ." The court found the defendant not guilty of rape but of the included offense of fornication. Statements the judge made at the time of sentencing, referred to below, show that the trial judge did not regard this as an act of sexual intercourse between consenting adults.

Under defense counsel's logic that what occurred was entirely consensual, the victim should also have been arrested for fornication. In view of the record, the absurdity of this position needs only to be stated to be obvious.

Since the trial court did not find the defendant guilty of rape, we are not called upon to comment on the sufficiency of the record, had such finding been made.

We conclude, therefore, that this defendant cannot challenge the fornication statute on constitutional grounds under any theory of consensual acts between adults, since the act here was clearly not consensual.

Counsel for the defendant directs our attention to *Lovisi v. Slayton* (D. C. Va. 1973), 363 Fed. Supp. 620. In that case, a challenge was made to the constitutionality of a Virginia statute proscribing acts of sodomy. Lovisi and his wife had engaged in such acts with a third person and claimed the statute proscribing acts of sodomy was unconstitutional as an invasion of the right of privacy. Mr. and Mrs. Lovisi had permitted pictures to be taken of themselves in the act and the pictures had fallen into the hands of Mrs. Lovisi's children; the court held such acts thereby lost any character of being "private." The court said, pages 623, 624:

> "The Court is faced with the . . . question of whether, if the Lovisis' conduct was not constitutionally protected, they may attack the constitutionality of [the statute] on the basis of the rights of third persons. . . . The Court . . . holds that they do not have standing to assert the constitutional rights of other persons and thus may not attack the constitutionality of statutes underlying their conviction on this basis."

We agree with *Lovisi* and conclude that Byrd does not have standing to attack the constitutionality of the fornication statute.

The second question in this case is whether or not the trial court abused its discretion in the imposition of maxi-

mum sentences of incarceration of six months for the fornication and two years each for the counts of false imprisonment. It is clear that the trial judge believed the testimony of the two women complainants and did not believe the testimony of the defendant. The defense does not challenge the sufficiency of the evidence but does allege abuse of discretion in imposing maximum consecutive sentences of incarceration. It is clear that the judge regarded these offenses as serious. In sentencing the defendant, the judge said:

"In my view the defendant has demonstrated that he is a continuing threat to the welfare of the community and the security of those who are members thereof. I believe that he can be safely and accurately characterized as a beast of prey, and his activities in the space of approximately a week resulting in the charges here before the Court indicate that he is in need of that type of control and supervision which is available only under the most highly structured of circumstances. . . .

"Accordingly, by this defendant's conduct this Court deems it appropriate in his own interests, for his future rehabilitation, and in the interests of the protection of the members of this community, that the following sentences be imposed."

We are of the opinion that the characterization by the court of the acts of the defendant are supported by the record. The trial court felt the sentences were necessary to protect the community, which is a proper factor to be considered in the imposition of sentences. *Bastian v. State* (1972), 54 Wis. 2d 240, 245, 194 N. W. 2d 687; *Moore v. State* (1972), 55 Wis. 2d 1, 9, 197 N. W. 2d 820.

This court in *Gaddis v. State* (1974), 63 Wis. 2d 120, 129, 130, 216 N. W. 2d 527, said:

"This court will modify a sentence only where there has been a clear abuse of discretion, and an abuse of discretion will be found only where there is no rational basis for the sentence imposed, or where the rationale for the

sentence imposed is not either articulated in or inferable from the record."

Here, the court clearly articulated the rationale for the sentences imposed. There was certainly a rational basis for these sentences in view of the record. We find no abuse of discretion.

The third question is whether or not the defendant should receive credit toward his sentences for the period of his preconviction incarceration. The defendant in his brief claims he was in jail for a period of eighty-two days from February 7, 1973, when he initially appeared, until May 1, 1973, when he was convicted and sentenced. The state raises the point that the record is not clear that he was actually incarcerated during this entire period. The issue was not raised before the trial court.

We hold that a defendant must be given credit for time spent in custody prior to conviction to the extent such time added to the sentence imposed exceeds the maximum sentence permitted under the statute for such offense, provided such time spent in custody was a result of the criminal charge for which a prison or jail sentence is imposed or as a result of the conduct on which such charge is based, provided further that such custody was the result of the defendant's financial inability to post bail.

We agree with that part of the reasoning of the court in the case of *Culp v. Bounds* (D. C. N. C. 1971), 325 Fed. Supp. 416, 419, holding that where the statutory maximum sentence is given the failure to give credit for preconviction time spent in custody violates the Equal Protection Clause of the fourteenth amendment. The court said:

"North Carolina's failure to give Culp credit for time served before trial where petitioner has received a maximum sentence violates the Constitution . . . ."

". . . the fact that only those accused who are unable to raise bail are subjected to extra pre-trial incarceration when their prison time exceeds the statutory maximum (as with Culp) is an invidious discrimination against the poor in violation of the equal protection clause of the Fourteenth Amendment. See, e. g., Griffin v. Illinois, 351 U. S. 12, 76 S. Ct. 585, 100 L. Ed. 891 (1956); Douglas v. California, 372 U. S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963); Tate v. Short, 401 U. S. 395, 91 S. Ct. 668, 28 L. Ed. 2d 130 (1971). . . .

". . . Culp should be given credit for time spent in custody prior to commitment where he has been given a maximum sentence. Pre-trial detention is nothing less than punishment. An unconvicted accused who is not allowed or cannot raise bail is deprived of his liberty. . . . Fundamental notions of fair play . . . require that Culp receive credit for pre-commitment incarceration. . . .

"Alternatively, the state's refusal to give Culp credit for pre-trial detention is an unconstitutional discrimination on the basis of wealth prohibited by the Fourteenth Amendment. As outlined above, wealthy defendants (except where no bail is allowed) are able to remain out of prison until conviction and sentencing; the poor stay behind bars."

The United States Supreme Court has not dealt with this issue.[4]

The holdings in *Cheney v. State* (1969), 44 Wis. 2d 454, 171 N. W. 2d 339, 174 N. W. 2d 1, and *State v. Tew* (1972), 54 Wis. 2d 361, 195 N. W. 2d 615, that credit need not be given for preconviction incarceration where a maximum sentence is imposed are overruled.

We further hold that in imposing any sentence, the court must, in exercising its discretion, take into con-

[4] The United States Supreme Court in *McGinnis v. Royster* (1973), 410 U. S. 263, 93 Sup. Ct. 1055, 35 L. Ed. 2d 282, held that a New York statute denying defendants "good-time" credit toward parole eligibility for preconviction time spent in jail did not violate the Equal Protection Clause. The court pointed out, however, that the New York statutes do credit preconviction time toward the sentence received.

sideration, in determining the length of sentence to be imposed, the time the defendant has spent in preconviction custody. Such consideration must be given even though the time spent in custody when added to the sentence would be less than the maximum. This requirement modifies *Tew* by making such consideration mandatory rather than permissive.

Because the record in this case is not clear as to the time actually spent in custody by the defendant prior to conviction and whether or not it was due to financial inability to post bail, we remand the cause to the trial court for appropriate findings and a reduction of the maximum sentence imposed accordingly if the facts come within the rule enunciated in this opinion.

*By the Court.*—Judgment of conviction affirmed; judgment of sentence reversed; and cause remanded for further proceedings not inconsistent with the opinion.

ROBERT W. HANSEN, J. *(dissenting)*. Predicting future events has become quite an indoor sport in this country, with some claiming a psychic ability to foresee the shape of things to come. A judicial variant of the pastime has become popular in legal circles. Particularly as to decisions of the United States Supreme Court, those playing the game do not stop with the rule of the case as enunciated and limited. Rather they speculate as to where the reasoning or inclination of the high court might next lead it to travel.

An opportunity, but hardly an invitation, to thus seek to peer into the future came when the United States Supreme Court held that an indigent defendant could not be confined beyond the maximum sentence specified by statute because of his inability to pay the monetary portion of his sentence.[1] Such added time, beyond a

---

[1] *Williams v. Illinois* (1970), 399 U. S. 235, 90 Sup. Ct. 2018, 26 L. Ed. 2d 586.

maximum statutory penalty, was held to be an unconstitutional discrimination against those defendants who, by reason of indigency were unable to pay the fine imposed along with the maximum sentence. This rationale was applied and same result reached where an indigent defendant was convicted of an offense punishable only by fine and, by reason of such indigency, was forthwith required to go to jail where a more affluent convicted defendant would have only to pay a monetary fine.[2] So it was clear that the nation's highest tribunal had found and held that imposing the penalty of imprisonment on indigents solely because of their inability to pay a fine was a violation of the equal protection guarantees of the United States Constitution.

In the cases dealing with the penalty of imprisonment on indigents solely because of their inability to pay a fine, there is no mention of or reference to pretrial confinement resulting from an inability or disinclination to post the bond set for release pending trial. The difference in the two situations is obvious. Bail is required, and constitutionally authorized,[3] to insure the appearance of a defendant, charged with the commission of a crime, at trial.[4] Incarceration for failure to pay a money fine

[2] *Tate v. Short* (1971), 401 U. S. 395, 91 Sup. Ct. 668, 28 L. Ed. 2d 130. *See also: Morris v. Schoonfield* (1970), 399 U. S. 508, 90 Sup. Ct. 2232, 26 L. Ed. 2d 773.

[3] Art. VIII, Amendments to the United States Constitution, providing: "Excessive bail shall not be required . . . ." Art. I, sec. 6, Wisconsin Constitution, providing: "Excessive bail shall not be required . . . ."

[4] *Whitty v. State* (1967), 34 Wis. 2d 278, 286, 149 N. W. 2d 557, this court stating: ". . . An accused has a constitutional right to reasonable bail and the amount thereof should be determined solely in reference to the purpose of bail, namely, to assure the appearance of the accused when it is his duty to appear to answer the criminal prosecution. . . ."

is a penalty or punishment for the commission of an offense, alternatively provided and arising when the fine imposed is not paid. One would truly need psychic powers to find, in a decision on nonpayment of money fines, a future rule requiring automatic credit for pretrial detention resulting from a failure to post bail. However, if the *Williams* and *Tate* holdings are seen as no more than way stations on a planned longer journey to the destination of full credit on sentence for all periods of detention, pretrial or post-trial, then a trial court might well elect to rule now what it anticipates the United States Supreme Court will rule later on when the specific issue is presented to it.

Three recent federal courts, all district court level, have sought, or sought to foresee, the applicability of the United States Supreme Court rulings on incarceration due to nonpayment of a fine to require pretrial detention being credited on a prison sentence. Two make the full trip, or nearly so.[5] One of those two, in the southern district of Ohio, holds that ". . . where, for whatever reason, a defendant remains in jail prior to his trial he must be given credit on the statutorily fixed sentence ultimately imposed for all periods of actual confinement." [6] The other of the two, in the eastern district of Wisconsin, summarizes its holding as requiring ". . . that petitioner be credited with respect to the first period of preconviction detention resulting from his financial

---

[5] Nearly so, because even these decisions do not clearly spell out an automatic credit for time spent, post-trial, challenging a verdict or conviction. Nor does either deal with the situation where a pretrial detention might exceed the statutory maximum on a minor misdemeanor charge, and a defendant might claim the right of compensation for the time spent in custody in excess of the prescribed statutory maximum penalty for the crime committed.

[6] *White v. Gilligan* (D. C. Ohio 1972), 351 Fed. Supp. 1012, 1014.

inability to meet the bond set in his case." [7] Both of these cases require an automatic credit on any sentence imposed for time spent in pretrial detention due to not posting bond. The third district court level decision, the one in the western district of North Carolina, stops midway. It sees the "essential question" as being ". . . whether the time a prisoner spends in custody prior to trial when added to the sentence to be served upon commitment can total *more* than the statutory maximum punishment for the crime involved." [8] Where the time spent in custody without commitment, when added to the sentence given after trial, is less than the statutory maximum, the court is ". . . reluctantly inclined to indulge the fiction that the trial judge who imposes sentence has given the defendant credit for time served before commitment." [9] The result, under the North Carolina decision, is that the constitutional issue of discriminatory treatment arises or is to be considered only where the time spent in pretrial detention, added to the sentence imposed, exceeds the statutory maximum. This very nearly limits applicability to those cases where the sentence imposed on a single charge is near the maximum, or where near-maximum sentences on multiple charges are made to run consecutively. This is the modified or halfway rule accepted by the majority of this court in the case before us.

What is wrong with all three district court level federal decisions, and wrong with the majority of our court electing to follow the even more cautiously limited and persuasively reasoned one of the three, is that none

---

[7] *Taylor v. Gray* (D. C. Wis. 1974), 375 Fed. Supp. 790, 792, summarizing holding, conceded without agreeing by the respondent state, in *Monsour v. Gray* (D. C. Wis. 1973), 375 Fed. Supp. 786.

[8] *Culp v. Bounds* (D. C. N. C. 1971), 325 Fed. Supp. 416, 418, 419.

[9] *Id.* at page 419, fn. 1.

of them square with a recent United States Supreme Court opinion.[10] That decision, in this writer's opinion, expressly negatives the analogizing of time spent for nonpayment of a fine with time spent in pretrial detention for failure to post bond. In that case, the New York State statute involved gave the appellees-defendants credit only for the period of their presentence incarceration in county jail.[11] As a result, one defendant unable to post bail served 404 days jail time prior to his transfer to state prison to serve consecutive terms for burglary and grand larceny.[12] The other defendant also failed to make bail and spent 242 days in county jail prior to his trial, sentencing and transfer to state prison on sentences for robbery and grand larceny.[13] The majority opinion notes that it was undisputed that, were they to receive good-time credit for their presentence confinement in county jail, they would be entitled to appear before the parole board about four and three months, respectively, earlier.[14] That difference, between their status and that

[10] *McGinnis v. Royster* (1973), 410 U. S. 263, 93 Sup. Ct. 1055, 35 L. Ed. 2d 282.

[11] *Id.* at page 266, fn. 5.

[12] *Id.* at pages 266, 267.

[13] *Id.* at page 267.

[14] *Id.* at page 267. The contention of the defendants, as summarized by the court majority, was that ". . . 'denying state prisoners good-time credit for the period of their pre-sentence incarceration in a County Jail whereas those fortunate enough to obtain bail prior to sentence [receive] a full allowance of good-time credit for the entire period which they ultimately spend in custody' violates equal protection of the laws and discriminates against those state prisoners unable to afford or otherwise qualify for bail prior to trial." *Id.* at page 268. Under the New York statute ". . . appellees did receive jail-time credit for the period of their presentence incarceration in county jail . . . ." *Id.* at page 266. So appellees' claim of constitutional deprivation raised was limited to the portion of the statute which ". . . explicitly forbids, in calculating the *minimum parole date,* any good-time credit

of defendants similarly situated who did post bail and secure pretrial release, is what the case was about.

On the issue raised as to good-time credit, the high court majority acknowledged that the defendants, who had been unable to post bail, had been disadvantaged as compared with defendants released on bail prior to sentence.[15] Despite this finding of comparative disadvantage on the part of defendants unable to post pretrial bond, the high court majority rejected the constitutional challenge and upheld the New York State law, holding that such a state statute, even with such in-built disadvantage to nonbail posters, can further a legitimate state purpose.[16]

In upholding a state law that distinguished between prison time in serving a sentence and pretrial time spent in jail due to inability to post bond, and finding no constitutional infirmity in a resultant disadvantage as to defendants who remained in pretrial detention due to inability to post bond, the United States Supreme Court

for the period of county jail detention served prior to transfer to state prison." *Id.* at page 266.

[15] *Id.* at page 269, stating: "We first note that any relative disadvantage the distinction works on appellees is lessened by the fact that New York on September 1, 1967, replaced sec. 230 of its Correction Law with secs. 803 and 805, which apply to all convictions for offenses after that date. Under the new scheme, 'good time earned on the minimum sentence is abolished.' . . . Appellees thus are *disadvantaged* in the computation of time only *in comparison with those who* were convicted of offenses committed prior to September 1, 1967, *and made bail prior to trial.*" (Emphasis supplied.)

[16] *Id.* at page 270, stating: "The determination of an optimal time for parole eligibility elicited multiple legislative classifications and groupings, which the court below rightly concluded require only some rational basis to sustain them. . . . We do not wish to inhibit state experimental classifications in a practical and troublesome area, but inquire only whether the challenged distinction rationally furthers some legitimate, articulated state purpose. We conclude that it does."

majority upheld the state's contention that: ". . . 'state prisons differ from county jails with respect to purpose, usage and availability of facilities.'" [17] The opinion noted that: ". . . at state prisons a serious rehabilitative program exists. County jails, on the other hand, serve primarily as detention centers." [18] Then, concluded the high court majority: "These significant differences afford the basis for a different treatment within a constitutional framework." [19] The full equating of time spent in prison with time spent awaiting trial in a county jail is thus expressly and specifically denied. Additionally, there is the clear recognition that the purpose of detention in a county jail awaiting trial differs from the purpose of commitment to a state prison. Such difference of purpose is the difference between detaining to insure appearance at trial and commitment to a state prison as a penalty for an offense. Both in purpose and in the rehabilitative program present in a prison, absent in jail pretrial detention, there are significant differences. Such differences, sufficient to warrant denial of good-time credit for jail-time detention, also justify not judicially mandating credit on a prison sentence credit for pretrial jail-time detention. At the least, under the McGinnis holding, such credit for pretrial detention is not constitutionally required.

It is not always safe to quote a dissenting opinion, or even a concurring one, as to what a court majority opinion said or meant to say. But, in the McGinnis Case, the two-Justice dissent, written by Mr. Justice WILLIAM O. DOUGLAS,[20] helps make clear the issue involved and makes clear the contrasting and conflicting reactions to

[17] *Id.* at page 270.

[18] *Id.* at page 271.

[19] *Id.* at page 271.

[20] *Id.* at pages 277–283, Mr. Justice DOUGLAS dissenting, with Mr. Justice MARSHALL concurring in dissent, at page 277.

it. The dissent agrees with the majority that the consequence of the majority holding is ". . . that appellees are required to wait some months longer before they may appear before the Parole Board than do those who out on bail or on personal recognizance pending trial but sentenced to the same term for the same crime." [21] The dissenters would hold that ". . . discipline—not rehabilitative progress—is the key to 'good time' credit," [22] but that does not alter the majority ruling or reasoning which is controlling. The dissenters hold that, "[a]fter all is said and done, the discrimination in the present case is . . . leveled against those too poor to raise bail and unable to obtain release on personal recognizance." [23] Such summarization of the majority holding ignores the entirely different purpose involved in detaining, to insure appearance at trial with commitment as a penalty for commission of a crime, as well as denies the differences in facilities and programs available at state prisons as compared to county jails. But we have quoted from majority opinion and dissent to make clear, the writer would submit, that there is no constitutional basis, much less mandate, in the *McGinnis v. Royster* majority opinion to warrant either federal district courts, or the majority of this court, to judicially require that time spent in custody awaiting trial must be credited against time to be spent serving a prison sentence for commission of a criminal act. The writer would affirm here on all issues raised.

[21] *Id.* dissenting opinion, at page 278.
[22] *Id.* dissenting opinion, at page 279.
[23] *Id.* dissenting opinion, at page 280.