KUBART, Plaintiff in error, v. STATE, Defendant in error.

*No. State 44 (1974). Submitted under sec. (Rule) 251.54*
*September 9, 1975.—Decided September 30, 1975.*
(Also reported in 233 N. W. 2d 404.).

For the plaintiff in error the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender, and *Robert J. Paul,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Christine M. Wiseman,* assistant attorney general.

HEFFERNAN, J. On this review, two questions are raised. The defendant, William Kubart, contends that the trial judge unconstitutionally imposed an excessive sentence as punishment for the assertion of the right of a trial by jury and that following his sentence he was held in the Kenosha county jail for a period of four days prior to his transfer to the state reformatory and for which four days of incarceration he was not given credit toward the satisfaction of his prison term.

We conclude that the sentence imposed was not constitutionally defective, that the sentence was not imposed as the result of an abuse of discretion, and that the period of four days during which the defendant was held was not such an unreasonable delay in the commencement of his term of sentence as to constitutionally require that he be given credit for that period. We affirm the postconviction order (sec. 974.06, Stats.) of the circuit court.

This case arose out of a burglary that took place on August 28, 1972, and 11 additional burglaries. The defendant was arrested on April 12, 1973, for the burglary of the A. R. A. Company and on April 17, 1973, was bound over for trial. On May 29, 1973, an additional criminal complaint was filed charging the defendant with two additional counts of burglary. On May 30, 1973, the defendant, upon his plea of not guilty, was tried before a jury for the A. R. A. burglary. A verdict of guilty was returned on May 31st.

Subsequently, additional informations were filed charging eight separate counts of burglary.

On September 14, 1973, the defendant pleaded guilty to these additional eight charges, and on his own volition asked that three additional counts of burglary be read into the record for consideration at the time of sentencing. On that day, the court imposed a sentence of four years for the A. R. A. burglary, of which the defendant had been found guilty only after a jury trial. In respect to the eight counts to which the defendant pleaded guilty, the trial judge imposed, respectively, two two-year terms, each to be served consecutively to the A. R. A. burglary sentence and consecutively to each other, and a two-year term for the additional six counts of burglary, to be served concurrently with the other sentences. The defendant was thus sentenced to eight years. The possible sentence which he could have received on all of the charges amounted to ninety years.

In the defendant's brief, the defendant does not object to the total of eight years which was imposed. In fact, he refers to that overall sentence as being an expression of generous leniency by the trial judge. Rather, he focuses our inquiry upon the fact that the sentence imposed for the count of burglary for which he insisted on standing trial was twice as long as that for any of the other counts of burglary to which he pleaded guilty. He contends that this sentence was violative of his constitutional rights.

As a general proposition of law, the defendant is correct. A defendant cannot receive a harsher sentence solely because he has availed himself of the important constitutional right of trial by jury. *Hanneman v. State* (1971), 50 Wis. 2d 689, 691, 184 N. W. 2d 896; *Buckner v. State* (1972), 56 Wis. 2d 539, 550, 202 N. W. 2d 406. On the other hand, we have held that the mere fact that a defendant receives a greater sentence after having been

found guilty by a jury than the sentence in a somewhat similar case in respect to which he had pleaded guilty does not in itself show that the greater sentence was imposed as a penalty for the assertion of a constitutional right to a trial by jury. *Jung v. State* (1966), 32 Wis. 2d 541, 145 N. W. 2d 684.

We said in *McCleary v. State* (1971), 49 Wis. 2d 263, 182 N. W. 2d 512, that the sentencing process is a delicate and sensitive procedure which requires that the judge consider the nature and gravity of the offense, the social history of the defendant, as well as the possibility of effecting a deterrent or rehabilitation by sentences of varying lengths.

In this particular instance, unlike other cases that have come before our court (*e.g., Jung v. State, supra*), the same defendant is claiming a disparity for offenses which he contends are similar. It is clear that the individual defendant is the same, so the social history and what might be an effective deterrent in respect to future conduct remain a constant, but the crime in question arose out of a separate incident.

The defendant states that, when the trial judge imposed sentence, he made it apparent that he used none of the accepted *McCleary* standards for sentencing, but rather resorted to the unconstitutional procedure of punishing the defendant for the assertion of his right to trial by jury. The defendant relies on the following statement made by the trial judge at the time of sentencing:

"I would like to first of all say that I in making up my mind as to how I should sentence Mr. Kubart today, I have taken into consideration the period of time that he has been held in the county jail, and I feel that whatever consideration I give in that respect is more than considerate when we take into full consideration all of the charges that are now before this court against this defendant and for which he is being sentenced, along with

the fact that the defendant has had a previous record. I find it very difficult, Mr. Kupfer, to go along too much with the belief in Mr. Kubart's suddenly after very long, lengthy period of say at least four or five years that his history dates back here and even back possibly to the time as a very young boy, that he was under state care, that Mr. Kubart has suddenly in the last month or two made such a tremendous change, and I say that in all sincerity, due to the fact that I was informed as to certain mail that Mr. Kubart had sent out of the jail to people. I am also aware of Mr. Kubart's ability to influence people by his actions and his ability to talk to them and to sway them into his way of thinking. I have no objection to any defendant, especially on a criminal charge, wanting to have his case tried before a jury and to be allowed to use every process of law which is fully his right. But I do feel that once he has made that decision and that all the facts are in, and it is obvious that he did commit the crime, then under those circumstances I think I as a sentencing judge have the right to also consider that whether or not this person really wanted to cooperate or whether or not he was seeking an out. And my idea of cooperation is entirely before anything else is done that person decides to cooperate to the degree that it doesn't cost the state either time or money to proceed any further; that is cooperation. And I think not only that, a certain amount of remorse and a feeling of shame on the part of the individual, which I think is a necessary part of rehabilitation is shown with it. I am not very much influenced with Mr. Kubart's plea at this time. . . ."

That statement taken alone could arguably lead to the conclusion for which the defendant contends—that he was penalized excessively in respect to the count for which he insisted on trial merely because he insisted on that constitutional right. We conclude, however, that the judge's language does not support the defendant's contention when considered in the context of the sentencing procedure.

The record shows that, at the time of sentencing after the defendant had been found guilty of all nine offenses,

he asserted that while awaiting trial and disposition of the charges against him he had become rehabilitated. He claimed he had cooperated with the law enforcement officers and that he had given them information in regard to burglaries in respect to which he had not theretofore been suspected and had also given them information about other burglaries in which others had participated. The entire tenor of the defendant's plea was that rehabilitation had been accomplished while he was in the county jail and that he had fully cooperated with the authorities. He asked, in view of his alleged cooperation, that he not be placed in the penitentiary, but that he be permitted to serve whatever sentence was imposed in the county jail under the Huber Act.

The trial judge, however, correctly pointed out in response to the defendant's statement that the defendant had not cooperated with the authorities until after the time he had been found guilty by the jury, and that the cooperation with the police had been manifested only during the last month or two. The judge stated that the defendant's long record of criminal conduct, extending over a period of more than four years, was inconsistent with his sudden claim of cooperation.

We find no evidence of record that the judge referred to, or relied upon, Kubart's insistence on a jury trial to support the imposition of a four-year term for the A. R. A. burglary. Rather, the reference to the trial was merely a recitation of the historical facts of record which rebutted Kubart's assertion that he had been wholly cooperative with the police and that the entire course of presentence incarceration was indicative of remorse and contrition which warranted the unusual disposition of a multiple offender, *i.e.,* placing him under the partial release permitted by the Huber Act.

In this respect, the case is not unlike *Buckner v. State, supra.* Therein, the trial judge remarked, in response to a defendant's plea for a minimal con-

current sentence, that the defendant had in fact not cooperated with the police. In *Buckner,* the defendant argued that this was tantamount to penalizing him because he availed himself of his constitutional right to remain silent. We said in *Buckner:*

"It does not automatically follow, however, that an offhand reference to a consideration indicates the trial court must have utilized it in his sentencing deliberations. The quoted exchange was probably prompted by defense counsel's plea for a minimal concurrent sentence. Nowhere is it indicated 'clearly' that the trial court increased the defendant's sentence because the defendant exercised his right to remain silent." (p. 551)

In this case, also, there is no evidence that the sentence was imposed to penalize the defendant for exercising a constitutional right.

While counsel on this appeal appears only to assert that there was an abuse of discretion as a matter of law because of the alleged additional penalty for the assertion of the right to trial by jury, nevertheless, the question of whether the judge abused his discretion under the *McCleary* standards is posed by the record. *McCleary* points out that the imposition of a sentence is a discretionary act and that discretion can only be properly exercised by a demonstrated process of reasoning.

"This process must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards. . . . '. . . there should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth.' " (p. 277)

We also stated in *McCleary, supra,* page 282, that we seek to uphold the exercise of judicial sentencing discretion; and even in those instances where there is no delineation of the factors utilized by the trial judge,

we are obliged to search the record to determine whether the sentence can be sustained.

In the instant case, the trial judge stated that in imposing sentence he considers the seriousness of a particular charge and the penalty which ought to be applied to that charge. The record shows that, in the A. R. A. burglary, the value of the goods taken from the burglarized establishment was substantially higher than the value of goods taken in the other burglaries. Moreover, there was evidence of a convincing nature that, in the A. R. A. burglary, Kubart involved juveniles in his criminal activities. While there is also some evidence that he involved juveniles in respect to the second and third counts, that evidence is less clear.

A rational distinction existed for imposing a substantially higher sentence for the A. R. A. burglary than for those offenses to which Kubart pleaded guilty. Upon postconviction hearing, the trial judge explained that, in view of the totality of the charges and after giving consideration to the individual cases, he felt that an overall sentence of eight years would be appropriate.

In *State v. Christopherson* (1967), 36 Wis. 2d 574, 153 N. W. 2d 631, we pointed out that, when a defendant has been convicted of multiple counts, there is no obligation to state separately the sentence for each count, and that the exercise of discretion on that sentence will be measured by the totality of facts surrounding the offenses.

Accordingly, in view of the extensive criminal record of this defendant, and in view of the expressed reasons for that sentence given by the trial judge at the initial sentencing and upon the postconviction hearing, we would not hold a total eight-year sentence to constitute an abuse of discretion. It would, therefore, be unreasonable for this court to conclude that the four-year

sentence was an abuse of discretion when an eight-year sentence overall is clearly sustainable.

Additionally, the record reveals abundant and proper reasons for imposing the heavier sentence for the A. R. A. burglary. The trial judge did not abuse his discretion in imposing sentence.

The additional point raised by the defendant arises out of the fact that he was sentenced by the trial judge on September 14, 1973, but was not transferred to Wisconsin State Reformatory at Green Bay until September 18th. He alleges that this constitutes an additional four-day imposition of sentence, because, were he a wealthy defendant, he might have been able to be enlarged on bail until such time as the state reformatory was able to receive him. He contends that a distinction is made between wealthy defendants and indigent ones and, therefore, he was denied equal protection of the law. The state counters this assertion on the ground that the defendant did not request postconviction bail and, therefore, does not have standing to assert that he was deprived of postconviction liberty because of his indigency.

The mere fact that a convicted defendant is either wealthy or indigent is not initially determinative of his eligibility for bail. Release on bail after a conviction for a felony is within the discretion of the trial court or of the supreme court. The question of whether a convicted person is denied bail because of indigency cannot be reached until the trial judge or this court has exercised its discretion to determine whether the defendant is eligible for bail.

We conclude, therefore, that Kubart has no standing to assert that he has been deprived of equal protection under the statute. A defendant cannot make the equal-protection claim asserted here without having first applied for, and been granted, release on bail. To

hold otherwise is contrary to well-established principles that a party must show he has been injuriously affected before he can attack the alleged deprivation of right on the grounds of unconstitutionality. *Schmidt v. Local Affairs & Development Dept.* (1968), 39 Wis. 2d 46, 60, 158 N. W. 2d 306; *Jensen v. State* (1967), 36 Wis. 2d 598, 607b, 153 N. W. 2d 566, 154 N. W. 2d 769.

Additionally, the defendant attacks the constitutionality of the statute which permits him or any convicted defendant to be held in the county jail or to be at liberty on bail without credit on the term of imprisonment, that by statute commences to run only upon arrival at the institution.

Sec. 973.15 (1), Stats., provides in part:

"All sentences to the Wisconsin state prisons shall be for one year or more. Except as otherwise provided in this section, all sentences commence at noon on the day of sentence, but time which elapses after sentence while the defendant is in the county jail or is at large on bail shall not be computed as any part of his term of imprisonment."

Under this statute there is no denial of equal protection of the law because of indigency, for even a wealthy person released on bail under the terms of the statute does not receive credit for the time on bail and, as stated above, wealth or indigency of a convicted felon has nothing to do with the initial question of eligibility for bail. The fact remains, however, that under the operation of this statute, the defendant was imprisoned for a period of four days after the imposition of his sentence, and for that four days he will be given no credit toward the diminution of the term of sentence.

Sec. 973.15 (1), Stats., is not consistent with the ABA *Standards Relating to Sentencing Alternatives and Procedures.* Sec. 3.6 (a) of that standard provides:

"Credit against the maximum term and any minimum term should be given to a defendant for all time spent

in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. This should specifically include credit for time spent in custody prior to trial, during trial, pending sentence, pending the resolution of an appeal, and prior to arrival at the institution to which the defendant has been committed."

Nor is sec. 973.15 (1), Stats., consistent with the federal rule that gives credit for the time spent awaiting transfer. 18 USCA, sec. 3568.

In *Byrd v. State* (1974), 65 Wis. 2d 415, 424, 222 N. W. 2d 696, this court, under the rationale of equal protection, adopted the principles of this standard and held that a defendant must be given credit for time spent in custody prior to conviction to the extent that such time added to the sentence imposed exceeds the maximum sentence permitted for the offense. *Byrd,* however, did not deal with the question of postconviction custody.

In the recent case of *Mitchell v. State* (1975), 69 Wis. 2d 695, 230 N. W. 2d 884, we held, however, that a denial of credit for time spent in custody after conviction and awaiting sentence does not violate due process of law for the period of time between defendant's return to county jail after commitment to the department of health & social services for a presentence social, physical, and mental examination. In *Mitchell,* we found that a two and one-half week period between the defendant's return to jail from the hospital and sentencing was not unreasonable and did not violate either the constitutional right of due process or of equal protection.

In the instant case the time of which the defendant complains is much shorter. We take judicial notice of the fact that some short period of time may well be required to make the necessary arrangements to transport a convicted prisoner from the place where he was sentenced to the institution. Even as in *Mitchell,* where the examination was a reasonable prerequisite of how a

convicted prisoner should be treated, so, in this case, some interval of time after sentence is undoubtedly necessary to allow for transportation arrangements and reception procedures.

We conclude, following the rationale of *Mitchell*, that a four-day delay was not unreasonable and did not rise to constitutional proportions even though those four days cannot, under the statute, be credited to the diminution of sentence. Nevertheless, the test of reasonableness in the postsentencing situation is a difficult one to apply except in a case such as this, where the period of postsentence preprison incarceration was extremely short. Since the deprivation in this case does not rise to constitutional proportions, we are not obliged to conclude that sec. 973.15 (1), Stats., is unconstitutional to the extent that it permits no credit for time spent prior to arrival at the prison. We, however, urge the legislature to consider the amendment of sec. 973.15 (1) and to incorporate therein that portion of the American Bar Association *Standards Relating to Sentencing Alternatives and Procedures, supra,* that gives credit for the time spent in custody after sentence and prior to the arrival at the institution to which the defendant has been committed. Such a revision will obviate the constitutional problem which may arise in the event of an unreasonable delay.

*By the Court.*—Order affirmed.