STATE of Wisconsin, Plaintiff-Respondent,

v.

Dennis R. ARMSTRONG, Defendant-Appellant.

Court of Appeals

*No. 2013AP1995–CR. Submitted on briefs February 7, 2014.—Decided April 10, 2014.*

2014 WI App 59

(Also reported in 847 N.W.2d 860.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Eileen A. Hirsch*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sarah L. Burgundy*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Blanchard, P.J., Sherman and Kloppenburg, JJ.

¶ 1. KLOPPENBURG, J. Dennis Armstrong appeals a judgment of conviction and an order denying his motion for sentence modification on the basis of a new

factor. Armstrong argues that a new factor exists because (1) at the time of the original sentencing, the parties and the circuit court believed that Armstrong was entitled to approximately two years of sentence credit, and (2) the court's belief about the length of sentence credit was highly relevant to the court's imposition of sentence, but (3) Armstrong was in fact entitled to only eight months of sentence credit. We conclude that Armstrong has demonstrated the existence of a new factor. We therefore reverse and remand for further proceedings consistent with this opinion.[1]

## BACKGROUND

¶ 2. In March 2012, Armstrong was convicted of multiple charges in three different cases. Two of the cases originated in 2009, and one of the cases originated in 2011. At a hearing in May 2012 for sentencing on all of these cases, Armstrong's trial counsel raised the issue of the sentence credit that Armstrong had accumulated. The following discussion regarding Armstrong's sentence credit and the sentence to be imposed ensued:

---

[1] The Honorable Richard O. Wright presided over the sentencing hearing and entered the judgment of conviction. The Honorable Bernard N. Bult presided over the hearing on the motion for sentence modification and entered the order on the motion.

The actual amount of sentence credit to which Armstrong was entitled was 245 days, but the parties refer to it as eight months. We do the same.

In his motion for sentence modification, Armstrong also asked the circuit court to find Armstrong eligible for the substance abuse program under Wis. Stat. § 973.01(3g) (2011–12). The circuit court granted that part of the motion. This appeal concerns only the denial of Armstrong's motion for sentence modification on the basis of a new factor.

All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

[Armstrong's Counsel]: The one thing that I would add . . . is that because [Armstrong has already served] so much jail time, I don't think that there would be any conditional time necessary [in the new sentence].

The Court: We need to get that figured out. How much time he has [sic] got in?

[Armstrong's Counsel]: Huge, two years something. I don't have the dates, Judge.

. . . .

The Court: You have not got it figured out? It is considerable if it is approaching two years.

[Armstrong's Counsel]: Yes.

[Prosecutor]: Yes.

The Court: That he would get credit for against confinement time.

¶ 3. The prosecutor recommended that the circuit court sentence Armstrong to prison for a total of fourteen years (six years' initial confinement, eight years' extended supervision). The court asked the prosecutor: "[H]ow does that calculate in? You are asking for some confinement time, but with the credit there is not that much available." The prosecutor stated: "There actually is. Obviously, my request as it stands with the consecutive sentences, six years in, then four years out after for each, so even with the jail credit, obviously there is still a substantial period of incarceration . . . . We have not sat down to figure out the actual amount." The court stated: "Sure would be helpful if the court knew what the credit time is."

¶ 4. In explaining the elements of the sentence imposed, the circuit court made observations that included the following: "I think that he needs to serve

some confinement time, but I will give him a chance to get out and . . . show that absolutely this is the last time that I [Armstrong] am going to be doing stuff like this."

¶ 5. On Count Seven of the 2011 case, the circuit court sentenced Armstrong to seven years in prison (four years' initial confinement, three years' extended supervision). On Count One of the 2011 case and in the 2009 cases, the court imposed and stayed sentences, and placed Armstrong on probation.

¶ 6. After imposing the sentences, the circuit court stated: "You know, you [Armstrong] have a lot of credit. The time that you are going to be serving in confinement is not going to be long. You get back out [and] it will be your choice then."

¶ 7. In July 2013, Armstrong filed a motion for sentence modification, arguing that a new factor warranted sentence modification, namely, that "[c]ontrary to the court's understanding at sentencing, Mr. Armstrong was entitled to about 8 months, not 2 years, of credit. Therefore, the sentence that the court imposed, believing that Mr. Armstrong would serve about 2 years in prison, will in fact result in well over 3 years of confinement . . . ." It appears that the circuit court determined that Armstrong had failed to identify a new factor meriting sentence modification. At the hearing on the motion for sentence modification, the court stated:

> I think in order for this Court to step back and make a sentence modification I would have to have some basis to do that, and I'm not seeing any basis in the record where I could make a finding that the judge's intent was not carried through with the order for the original sentence. Therefore, I'm going to deny the motion for sentence modification that's been filed. The original sentence will stand.

Armstrong appeals.

116

## DISCUSSION

¶ 8. Armstrong argues that the fact that he was entitled to only eight months of sentence credit, instead of approximately two years of sentence credit as the parties and the circuit court believed at the time of the sentencing hearing, is a new factor.[2] The State argues that Armstrong has failed to demonstrate the existence of a new factor. Alternatively, the State argues that the facts of this case "do not support a new-factor analysis" because reliance on sentence credit as Armstrong suggests "would reflect an improperly imposed sentence."

¶ 9. As we explain below, we agree with Armstrong that the new factor here is the unknowingly overlooked fact that Armstrong was entitled to eight months rather than approximately two years of sentence credit, and that the record plainly reflects that this amount of sentence credit was highly relevant to the circuit court's imposition of the sentence. We also address and reject the State's arguments to the contrary.

¶ 10. A circuit court has discretion to modify a sentence if the defendant presents a new factor. *State v. Boyden*, 2012 WI App 38, ¶ 5, 340 Wis. 2d 155, 814 N.W.2d 505. A "new factor" is:

[A] fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time

---

[2] Armstrong also argues that the circuit court did not employ the correct "new factor" analysis when deciding his motion for sentence modification. We do not address this argument because, as we will explain, we conclude that Armstrong has demonstrated the existence of a new factor as a matter of law. *See Turner v. Taylor*, 2003 WI App 256, ¶ 1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (when a decision on one issue is dispositive, we need not reach other issues raised).

117

of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.

*Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975). " 'Deciding a motion for sentence modification based on a new factor is a two-step inquiry.' " *Boyden*, 340 Wis. 2d 155, ¶ 5 (quoted source omitted). First, the defendant must demonstrate by clear and convincing evidence the existence of a new factor. *Id.* Second, if a new factor exists, the circuit court must determine " 'whether that new factor justifies modification of the sentence.' " *Id.* (quoted source omitted).

■

¶ 11. Whether there is a new factor under these standards is a question of law that we review *de novo*. *Id.*, ¶ 6. However, whether a new factor justifies a sentence modification is a discretionary decision for the circuit court. *State v. Harbor*, 2011 WI 28, ¶ 37, 333 Wis. 2d 53, 797 N.W.2d 828.

¶ 12. Armstrong correctly contends that "the fact that [he] was entitled to only eight months of sentence credit" was unknowingly overlooked by all of the parties. The State does not dispute the point, and in any case the record reveals it to be beyond dispute.

¶ 13. At the sentencing hearing, Armstrong's trial counsel told the circuit court that Armstrong was entitled to "two years something" of sentence credit. The prosecutor did not object to this statement, but rather stated: "We would have to stipulate to that amount." The court's statement, "[s]ure would be helpful if the court knew what the credit time is," demonstrates that the court was not otherwise aware of the amount of sentence credit to which Armstrong was

entitled at the time of the sentencing. The prosecutor's and defense counsel's each answering "Yes" to the court's query, "You have not got it figured out? It is considerable if it is approaching two years[,]" confirms that the parties and the court at that point believed that Armstrong was entitled to approximately two years of sentence credit. These exchanges at the sentencing hearing demonstrate that the fact that Armstrong was entitled to only eight months of sentence credit was "unknowingly overlooked by all of the parties." *Rosado*, 70 Wis. 2d at 288.

¶ 14. The State counters that "the 'new factor' alleged here" is not that Armstrong was entitled to less credit than the parties and the circuit court believed, but that based on the sentence structure, not all of his credit was applicable to his period of confinement. According to the State:

> Armstrong appeared to have 13 months of credit on his 2009 charges and eight months available on his 2011 charges. Because of the sentence structure, however, Armstrong was only entitled to immediate credit for the eight months attached to the 2011 counts.
>
> That said, the credit accrued for his 2009 cases did not simply go away. If Armstrong were to violate his probation and be revoked, he would be entitled to the time he spent in detention on the 2009 cases to be applied to his stayed-and-imposed sentences. Therefore, Armstrong indeed appears to have almost two years of credit. The "new" factor alleged here is that the sentence structure prevented him from having all of that credit applied to his period of initial confinement.

(Citation and footnote omitted.) The State's argument merely serves to underscore the fact that was "unknowingly overlooked by all of the parties" in this case, specifically, the manner in which the sentence credit

119

would apply to the sentences imposed in Armstrong's three cases. *Rosado*, 70 Wis. 2d at 288. At the time of the sentencing, the parties and the court believed that Armstrong was entitled to something over two years of sentence credit, and unknowingly overlooked the manner in which that sentence credit would apply to the 2009 and 2011 cases.

¶ 15. Armstrong next contends that "[t]he record . . . establishes that the presumed two years of sentence credit was highly relevant to the court's sentence" because the circuit court "asked about sentence credit several times before it imposed [the] sentence" and referred to it yet again after imposing the sentence. In contrast, the State argues that the sentence credit was not "highly relevant" to the sentence imposed because the court's "primary concern was that Armstrong had a very lengthy record of these types of crimes and had yet to show that he could avoid committing further crime when he was released."

¶ 16. We agree with Armstrong that the amount of sentence credit to which Armstrong was entitled was a factor "highly relevant to the imposition of [the] sentence." *Rosado*, 70 Wis. 2d at 288. Throughout the sentencing hearing, the circuit court pointedly and repeatedly drew attention to the amount of sentence credit to which Armstrong would be entitled, and made clear why the topic was important to the court. The court made statements that included the following: "We need to get [the sentence credit] figured out," and "[H]ow does [sentence credit] calculate in." The court noted that the sentence credit would be "considerable if it is approaching two years." And finally, the court explained: "You know, you [Armstrong] have a lot of credit. The time that you are going to be serving in confinement is not going to

be long." The court's repeated references to sentence credit were consistent with the court's stated intent that Armstrong "serve some confinement time" that "is not going to be long" in order to give Armstrong a chance to "show that absolutely this is the last time that I [Armstrong] am going to be doing stuff like this."

¶ 17. Taken together, all of the circuit court's statements at the sentencing hearing demonstrate that the sentence credit was "highly relevant to the imposition of [the] sentence." *Rosado*, 70 Wis. 2d at 288. It is obvious that the court decided to factor into the sentencing determination the amount of sentence credit, in order to avoid imposing a period of incarceration that was longer than necessary, which is a proper sentencing consideration. *See State v. Gallion*, 2004 WI 42, ¶ 44, 270 Wis. 2d 535, 678 N.W.2d 197 ("In each case, the sentence imposed shall 'call for the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant.' ") (quoted source omitted)).

¶ 18. Accordingly, we conclude that Armstrong has demonstrated by clear and convincing evidence the existence of a new factor, namely, the unknowingly overlooked fact that Armstrong was entitled to eight months, not approximately two years, of sentence credit. We therefore remand to the circuit court to determine whether the new factor justifies modification of the sentence. *See Harbor*, 333 Wis. 2d 53, ¶ 37 (whether a new factor justifies modification of the sentence is a discretionary decision for the circuit court).

¶ 19. For the first time on appeal, the State appears to argue that (1) if Armstrong is correct that sentence credit was a highly relevant factor to the

imposition of sentence, and (2) if the circuit court on remand similarly considers whether sentence credit warrants modification of the sentence, (3) then both the imposed sentence and the court's actions on remand would violate *Struzik v. State*, 90 Wis. 2d 357, 279 N.W.2d 922 (1979). The State bases this argument on its interpretation of *Struzik*, which we understand to be that *Struzik* prohibits a court from considering the amount of sentence credit to which a defendant is entitled before determining the appropriate sentence.

¶ 20. Although we do not generally decide issues that are raised for the first time on appeal, we have the authority to do so. *Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980), *superseded by statute on other grounds*. Because this issue involves a question of law, has been briefed by the parties, and is of sufficient importance to merit a decision, we choose to decide it. *See State v. Moran*, 2005 WI 115, ¶ 31, 284 Wis. 2d 24, 700 N.W.2d 884 (explaining that appellate courts have the discretion to address an issue not raised in the circuit court when the issue "involves a question of law, has been briefed by the opposing parties, and is of sufficient public interest to merit a decision").[3]

¶ 21. In response to the State's argument, Armstrong asserts that "the court properly took into account the presumed two years of pretrial incarceration

[3] In addition, we understand the State to argue that if we follow the interpretation urged by Armstrong, then the circuit court imposed an improper sentence, and the proper remedy would be to remand for resentencing. Accordingly, we address and reject the State's argument, and, for the reasons already stated, remand for determining whether the new factor (the accurate amount of sentence credit) warrants modification of the sentence.

credit in determining an appropriate sentence" because, under *Gallion*, 270 Wis. 2d 535, ¶ 43 n.11, " 'the length of pretrial detention' " is a factor that a court may consider when determining the sentence. (Quoted source omitted.) We conclude that the State's narrow reading of *Struzik* is incorrect based on the development of the law governing sentence credit, the clarification provided by cases interpreting *Struzik*, and the express guidance provided in *Gallion*.

¶ 22. We start with an explanation of the development of Wisconsin's sentence credit law, which demonstrates that circuit courts have long considered sentence credit as a factor in the sentencing determination. Under our current law, "[a] convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed." WIS. STAT. § 973.155(1)(a). Prior to the enactment of § 973.155 in 1978, convicted offenders were not automatically entitled to sentence credit. *See State v. Tew*, 54 Wis. 2d 361, 366–67, 195 N.W.2d 615 (1972). In *Tew*, the defendant contended that he was entitled to 112 days of sentence credit for the time he spent in custody while awaiting sentencing. *Id.* The circuit court imposed the maximum sentence, and did not credit the defendant with the 112 days he had spent in custody. *Id.* On appeal, the supreme court upheld the sentence, concluding that the circuit court appropriately took "the [defendant's period of] presentence incarceration into consideration and [nevertheless] decided the maximum sentence was appropriate." *Id.* at 368. The court explained that "[t]he American Bar Association's *Standards Relating to Sentencing Alternatives and Procedures* . . . provides that a mandatory credit should be given for pretrial detention." *Id.* at 366. However, the

123

court did not adopt the ABA Standard, but instead recognized "the principle that incarceration prior to sentencing is a proper factor to be taken into consideration by the sentencing judge." *Id.* at 367. As *Tew* makes clear, convicted offenders were at that time not automatically entitled to sentence credit. Rather, in all circumstances, the granting of sentence credit was a proper factor left to the discretion of the circuit court.

¶ 23. The supreme court revisited the holding of *Tew* in *Byrd v. State*, 65 Wis. 2d 415, 425–26, 222 N.W.2d 696 (1974). In *Byrd*, the supreme court overruled *Tew's* holding "that credit need not be given for preconviction incarceration where a maximum sentence is imposed," stating:

> [A] defendant must be given credit for time spent in custody prior to conviction to the extent such time added to the sentence imposed exceeds the maximum sentence permitted under the statute for such offense, provided such time spent in custody was a result of the criminal charge for which a prison or jail sentence is imposed or as a result of the conduct on which such charge is based, provided further that such custody was the result of the defendant's financial inability to post bail.

*Byrd*, 65 Wis. 2d at 424–25. The supreme court further held:

> [I]n imposing any sentence, the court must, in exercising its discretion, take into consideration, in determining the length of sentence to be imposed, the time the defendant has spent in preconviction custody. Such consideration must be given even though the time spent in custody when added to the sentence would be less than the maximum.

*Id.* at 425–26. Accordingly, after *Byrd*, convicted offenders were entitled to mandatory sentence credit in

limited circumstances, but in all circumstances, the granting of sentence credit remained a proper factor for the sentencing court to consider.

¶ 24. In *Klimas v. State*, 75 Wis. 2d 244, 249, 249 N.W.2d 285 (1977), the supreme court extended the holding of *Byrd*, concluding that "as a matter of equal protection, there [must] be credit . . . for all pre-trial and pre-sentence confinement that results from the indigency of the defendant." Because Wisconsin had not yet developed a legislative scheme to govern sentence credit, the supreme court set forth the following procedure:

> [T]o implement this decision it . . . is necessary for the trial judge to ascertain the number of days the defendant has been held in custody prior to sentencing for inability to make bail . . . . It is suggested that the trial judge sentence for the gross amount that he concludes, in his discretion, to be appropriate. He then should make a separate finding that the defendant has, because of indigency, been obliged to remain in custody for the ascertained period, and that such period of time be deemed time served in partial satisfaction of the sentence, and which time shall be credited as time served by the confining authority.

*Klimas*, 75 Wis. 2d at 252.

¶ 25. The legislature responded to *Klimas* by enacting WIS. STAT. § 973.155, which codified the right of a convicted offender to "be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed." WIS. STAT. § 973.155(1)(a) (1977–78); *see also State v. Floyd*, 2000 WI 14, ¶¶ 21–22, 232 Wis. 2d 767, 606 N.W.2d 155 ("The *Klimas* court . . . urged the legislature to provide sentence credit for custody based on an indigent defendant's inability to post bail . . . . The

legislature responded by enacting WIS. STAT. § 973.155, which expanded sentence credit beyond the scope of *Klimas*.").

¶ 26.	Shortly after the legislature enacted WIS. STAT. § 973.155, the supreme court decided *Struzik*. The defendant in *Struzik* was entitled to fourteen days of sentence credit, a fact that the circuit court acknowledged when it imposed a sentence of five years and fourteen days. *Struzik*, 90 Wis. 2d at 367. The supreme court reversed the sentence, explaining: "Under the procedure outlined in *Klimas v. State* . . . we pointed out that the trial court should first determine an appropriate sentence, then determine the time spent in preconviction custody, and finally credit that time toward the sentence imposed." *Id.* Regarding the sentence imposed by the circuit court, the supreme court stated: "The peculiar length of the sentence transparently reveals that the [circuit] court added to the appropriate sentence the time already served, so that the sentence after the application of the credit would still constitute the sentence originally determined." *Id.*

¶ 27.	The supreme court's discussion in *Struzik* makes clear that the supreme court applied the procedure it had previously set forth in *Klimas* to avoid a clearly defined problem: a court acting with the improper purpose of depriving a defendant of sentence credit by enlarging the sentence. As we will explain, the cases interpreting *Struzik* clarify that compliance with the formulation set forth in *Klimas* and reiterated in *Struzik* is not a strict requirement when that problem is avoided.

¶ 28.	We turn to the cases interpreting *Struzik*. In *State v. Coles*, 208 Wis. 2d 328, 336, 559 N.W.2d 599 (Ct. App. 1997), this court clarified that "the sentencing tactic which *Struzik* condemns is the grant of the

126

required sentence credit in one judicial breath and the enhancement of the sentence by the same amount in the next." The defendant in *Coles* was entitled to 185 days of sentence credit, and he argued that the circuit court violated *Struzik* by imposing a "time served" sentence of 185 days. *Coles*, 208 Wis. 2d at 331, 335–36. We concluded that the circuit court did not violate *Struzik* because it "granted [the defendant] the full sentence credit to which he was entitled and then equated that credit with the sentence selected." *Coles*, 208 Wis. 2d at 336. We explained that, unlike in *Struzik*, the sentence imposed did not "even remotely suggest a suspect motivation on the part of the [circuit] court." *Coles*, 208 Wis. 2d at 336–37. It is apparent that the "suspect motivation" we referenced in *Coles* is a motivation by the sentencing court to deprive the defendant of the benefit of sentence credit by enlarging the sentence.

¶ 29. In *State v. Fenz*, 2002 WI App 244, ¶ 3, 258 Wis. 2d 281, 653 N.W.2d 280, the circuit court determined that the defendant needed to participate in an institutional sex offender treatment program that required six years of incarceration to complete. In connection with this determination, the court took into account the defendant's 342 days of sentence credit before imposing the sentence for the purpose of ensuring that the defendant would be incarcerated for at least six years. *Id.* We concluded that the court did not violate *Struzik* when it considered the sentence credit before imposing the sentence "because [the court] articulated a specific time-related incarceration goal [which] required the court to consider the presentence credit due" to the defendant. *Fenz*, 258 Wis. 2d 281, ¶ 10. We explained that "unlike *Struzik,* the circuit court did not tack onto the sentence chosen the amount

127

of time served; rather, the circuit court used presentence credit as a factor to fashion a sentence appropriate to achieve the court's goal in the first instance." *Id.*, ¶ 11.

██

¶ 30. We conclude that these cases set forth the following distinction concerning the consideration of sentence credit as a factor in determining the sentence: a court may consider the amount of sentence credit to which the defendant is entitled *so long as* the court does not do so with the purpose of enlarging the sentence to deprive the defendant of his or her right to receive sentence credit. This conclusion is consistent with the express statement in *Gallion* that courts may consider " 'the length of pretrial detention' " in determining the sentence. *Gallion*, 270 Wis. 2d 535, ¶ 43 n.11 (quoted source omitted).

¶ 31. In sum, the State's interpretation of *Struzik* cannot be squared with *Coles* and *Fenz*, where this court held that the circuit courts do not violate *Struzik* by considering sentence credit in imposing the sentences, so long as the courts do not act with the purpose of enlarging the sentences in order to deprive the defendants of the credit to which they are entitled. And the State's interpretation of *Struzik* conflicts with the affirmation in *Gallion* that the amount of sentence credit is a factor that courts may consider in determining the sentence. *See Gallion*, 270 Wis. 2d 535, ¶ 43 n.11.

¶ 32. Here, the circuit court took into account the amount of sentence credit to which Armstrong was entitled in determining the sentence, in order to ensure that Armstrong's period of incarceration was not longer than it needed to be. However, nothing in the record suggests that the court enlarged the sentence with the

purpose of depriving Armstrong of the sentence credit to which he was entitled. Accordingly, we conclude that *Struzik* prohibits neither the sentence imposed in this case, nor a sentence modification hearing for the circuit court to determine whether the accurate amount of sentence credit warrants modification of the sentence.[4]

## CONCLUSION

¶ 33. For the reasons set forth above, Armstrong has demonstrated the existence of a new factor. Moreover, neither the sentence imposed, nor the remand that Armstrong seeks for determination whether the new factor warrants modification of the sentence, violates *Struzik*. We therefore reverse and remand to the circuit court to determine whether the new factor (the accurate amount of sentence credit) warrants modification of the sentence.

*By the Court.*—Judgment and order reversed and cause remanded with directions.

---

[4] Neither party addresses in briefing any aspect of how the circuit court should approach the modification hearing, and therefore we do not address this topic.