Ronald E. BRINKMAN, Petitioner,

v.

Dr. Edward F. SCHUBERT, Superintendent, Central State Hospital, Respondent.

Wilbur Eugene STREETER, Petitioner,

v.

Manual CARBALLO, Secretary, Department of Health and Social Services,

and

Ramon Gray, Warden, Wisconsin State Prison, Respondents.

Raymond L. WILLIAMS, Petitioner,

v.

Ramon GRAY, Respondent.

Eugene HARRIS, a/k/a Eugene Dempleton, Petitioner,

v.

Ramon L. GRAY, Respondent.

Nos. 74–C–468, 76–C–107, 76–C–247 and 76–C–293.

United States District Court, W. D. Wisconsin.

Oct. 1, 1976.

On Motion to Vacate Order Oct. 28, 1976.

Charles B. Vetzner, Post-Conviction Defense Project, Madison, Wis., for petitioner Brinkman, in No. 74–C–468 and for petitioner Streeter, in No. 76–C–107.

Raymond L. Williams, pro se, in No. 76–C–247.

Eugene Harris, pro se, in No. 76–C–293.

John M. Schmolesky, Asst. Atty. Gen., Bronson C. La Follette, Atty. Gen., Madison, Wis., for respondents.

## REPORT and RECOMMENDATION

BARBARA B. CRABB, Magistrate.

These are petitions for writs of habeas corpus. Petitioners assert that they are in state custody in violation of the United States Constitution. 28 U.S.C. § 2254. Although the facts of each petition vary in certain respects, all of the petitioners base their claims for relief upon the contention that the failure of the court to credit them with jail time violates their constitutional rights to due process and to the equal protection of the laws and their right to be free from double jeopardy.

The following matters are not in dispute and the court may properly find them as fact:

## PROPOSED FINDINGS OF FACT

### BRINKMAN v. SCHUBERT

Petitioner Brinkman was arrested on or about July 15, 1966, and on the same day,

counsel was appointed to represent him in the county court for Dane County, Wisconsin. Petitioner was charged with two counts of rape, in violation of Wis.Stats. § 944.01(1). Petitioner's counsel filed a motion with the court seeking an order committing petitioner to Central State Hospital for a 60-day observation period to determine whether he was competent to stand trial. The motion was granted, bail was set at $15,000 on each of the two counts of rape charged in the complaint, and petitioner was committed to Central State Hospital. Petitioner remained at Central State Hospital until sometime between September 6, 1966, and September 16, 1966, when he was returned to the Dane County Jail. On September 16, 1966, petitioner waived preliminary examination and was bound over to circuit court, where he was arraigned on October 10, 1966. Petitioner pleaded not guilty and not guilty because insane. The court appointed two psychiatrists to examine petitioner, bail was continued, and trial was scheduled for November 14, 1966, but later continued.

On October 25, 1966, petitioner was examined by the two court-appointed psychiatrists who submitted their reports on October 27, 1966, and November 11, 1966. Supplemental reports were sought and were submitted by the psychiatrists on November 9, 1966, and on January 17 and 20, 1967. The defense retained a third psychiatrist who examined petitioner on February 27, 1967, and reported to defense counsel on March 29, 1967.

On May 1, 1967, petitioner appeared in court and changed his plea to a plea of guilty. He was thereupon committed to the Department of Health and Social Services for a presentence social, physical, and mental examination pursuant to the Sex Crimes Act. Upon the advice of the Department that petitioner was not in need of specialized treatment, on June 30, 1967, the court ordered petitioner to be returned to court for further proceedings. Sometime between June 30, 1967, and July 6, 1967, petitioner was returned to the Dane County jail. On July 6, 1967, petitioner was brought into court and was sentenced.

At the sentencing proceeding, the district attorney advised the court that the offenses with which petitioner was charged had occurred a year earlier, stating that the intervening months had been used to afford petitioner examinations by psychiatrists and by the staff of the sex deviate facility. The district attorney and defense counsel both recommended a fifteen-year sentence on each count to run concurrently. The judge imposed the recommended sentence upon petitioner without making any statement concerning petitioner's pretrial period of confinement.

The maximum penalty for rape is imprisonment for not more than thirty years.

## STREETER v. CARBALLO, ET AL.

Petitioner Streeter is an inmate of the United States Penitentiary at Leavenworth, Kansas, serving a twenty-five year sentence imposed upon him on May 14, 1973, in the United States District Court for the District of Minnesota. He is also serving a fifteen year concurrent sentence imposed upon him on July 10, 1973, in the circuit court for LaCrosse County, Wisconsin, following his conviction for the crime of kidnapping, a violation of Wis.Stats. § 940.31(1)(a). Petitioner is attacking only the state sentence in the instant petition.

On the day that petitioner was sentenced in LaCrosse County court, the sentencing judge issued a writ of habeas corpus ad testificandum to the LaCrosse County sheriff directing the sheriff to produce petitioner as a material witness at the trial of Roy Harding Gallington. On July 16, 1973, petitioner was transported from LaCrosse to the Wisconsin State Prison to begin service of his state sentence, but was returned to the LaCrosse County jail on the same day when the officials at the Wisconsin State Prison refused to assume custody of defendant. Upon petitioner's return to LaCrosse County, the court remanded his custody to the LaCrosse County jail pursuant to the writ of habeas corpus ad testificandum.

Petitioner remained in the LaCrosse County jail until the conclusion of Gallington's trial.

On October 5, 1973, petitioner was transported to the Wisconsin State Prison and began service of his sentence. He received no credit upon his state sentence for the time spent in custody in LaCrosse pursuant to the writ of habeas corpus ad testificandum.

Petitioner filed a petition for a writ of habeas corpus in the state supreme court seeking credit on his state sentence, contending that the failure to credit him with jail time violated his right to due process under the United States Constitution. Petitioner did not argue that the failure to give him jail time credit subjected him to unconstitutional double punishment. The petition was denied on January 23, 1974, in an unpublished opinion.

At the time petitioner was sentenced, the maximum sentence for the crime of kidnapping was fifteen years.

## WILLIAMS v. GRAY

Petitioner Williams is an inmate of the Wisconsin State Prison. He was arrested in Rock County, Wisconsin on March 6, 1973, on a charge of armed robbery in violation of Wis.Stats. §§ 943.32(1) and 943.32(2). He did not make bail and was confined to the Rock County jail until his sentencing on June 29, 1973. At the sentencing, the judge stated on the record that he was "aware of the fact that [petitioner] has spent three months in jail as a result of this incident, and will take that into consideration." The court then sentenced petitioner to an indeterminate term of not more than five years.

The maximum term to which petitioner could have been sentenced was thirty years.

Petitioner did not appeal to the state supreme court from his conviction or from his sentence.

## HARRIS v. GRAY

Petitioner Harris is confined at the Wisconsin State Prison serving three concurrent indeterminate terms of two and one-half years for violation of Wis.Stats. § 161.-41(1)(a).

Petitioner was arrested in Dane County, Wisconsin, on January 23, 1974. He did not post bail and remained in jail until his sentencing on June 10, 1974. He received a suspended sentence and was placed on probation for three years. The probation was revoked on October 24, 1974, and petitioner was committed to the Wisconsin State Prison.

Under Wisconsin law at the time petitioner was sentenced, the maximum sentence upon conviction of one count of delivery of heroin was fifteen years.

Following the imposition of sentence, petitioner moved for modification of his sentence or for post-conviction relief. The motion was denied, with no opinion. Petitioner did not appeal to the state supreme court from the denial of his motion.

Wis.Stats. § 973.15 provides that sentences to the state prisons commence at noon on the day of sentence, "but time which elapses after sentence while the defendant is in the county jail or at large on bail shall not be computed as any part of his term of imprisonment."

## EXHAUSTION OF STATE COURT REMEDIES

Petitioners Brinkman, Williams, and Harris contend that it would be futile for them to take their claims to the state supreme court, as that court has determined in other cases that there is no merit to the claim that it is a violation of the constitution to fail to give credit for jail time when the sentence imposed is less than the maximum. *State v. Wills*, 69 Wis.2d 489, 230 N.W.2d 827 (1974); *Hall v. State*, 66 Wis.2d 630, 225 N.W.2d 493 (1975); *State v. Seals*, 65 Wis.2d 434, 223 N.W.2d 158 (1974); *Byrd v. State*, 65 Wis.2d 415, 222 N.W.2d 696 (1974). Respondents agree that it would be futile for these petitioners to exhaust their state court remedies.

As to petitioner Streeter, respondents Carballo and Gray contend that further resort to the state courts is required; that petitioner Streeter argued in state court

that he was denied due process, but has never raised the claim that the court's failure to give him jail time credit deprived him of his right to be free from double jeopardy.

In order to decide whether petitioner Streeter should be required to return to the state courts, it is necessary to review the decisions of the Wisconsin supreme court concerning credit for jail time. The first case to hold that the failure to give credit for jail time might violate the United States Constitution is *Byrd v. State*, 65 Wis.2d 415, 222 N.W.2d 696 (1974), in which the state court held that a prisoner is deprived of his constitutional right to equal protection if he is denied credit for time spent in custody when "such time added to the sentence imposed exceeds the maximum sentence permitted under the statute for such offense . . . provided further that such custody was the result of the defendant's financial inability to post bail." *Id.*, at 424, 222 N.W.2d at 701. The court adopted that portion of the decision in *Culp v. Bounds*, 325 F.Supp. 416, 419 (W.D.N.C. 1971), which held that the failure to give credit under such circumstances worked an "invidious discrimination against the poor in violation of the equal protection clause. . . ."

Implicitly rejected in *Byrd* was the alternative holding in *Culp v. Bounds* that a prisoner is subjected to unconstitutional double punishment if he is denied credit for time spent in custody when such time added to the sentence exceeds the maximum. The holding in *Byrd* is not entirely clear; it is not made explicit, for example, why the guarantee of equal protection is violated only by the failure to give credit on a

maximum sentence and not by a failure to give credit on a sentence which is less than the maximum,[1] nor does the court explain why it has chosen to limit the class of those who may claim the protection to persons financially unable to post bail as distinct from all those who are in custody for any reason prior to sentencing. Cf., *White v. Gilligan*, 351 F.Supp. 1012 (D.Ohio 1972).

In its next decision, the state court used language which may have conveyed the impression that its holding was derived from the double jeopardy clause rather than from the equal protection clause. *State v. Seals, supra.* The court did not mention equal protection nor did it say anything about indigency. It denied the defendant's claim that he was entitled to credit for his presentence jail custody, noting that the defendant had been given a sentence of ten years where the maximum was thirty-five years. The court said that the essential question is "'whether the time a prisoner spends in custody prior to trial when added to the sentence to be served upon commitment can total *more* than the statutory maximum punishment for the crime involved. . . .'" *State v. Seals, id.*, at 436, 223 N.W.2d at 159, quoting *Culp v. Bounds, supra*, at 419.

If a misimpression was conveyed in the *Seals* opinion, it was clarified in *State v. Wills, supra.* In that case the court made explicit its rejection of a claim to jail time credit based on the double jeopardy clause.[2]

In view of the clear and recent rejection by the state supreme court of the double jeopardy claim, I am persuaded that it would be futile for petitioner Streeter to return to that court with his double jeopardy claim.

1. In *Culp*, the court explained that it was "reluctantly inclined to indulge the fiction that the trial judge who imposes sentence has given the defendant credit for time served before commitment." *Culp v. Bounds*, 325 F.Supp. 416, 418 (W.D.N.C.1971). Possibly the Wisconsin supreme court indulges the same presumption.

2. See, *State v. Wills*, 69 Wis. 489, 230 N.W.2d 827 (1975), where the court says, at p. 494, 230 N.W.2d at p. 830, referring to its earlier decision in *Byrd v. State*, 65 Wis.2d 415, 222 N.W.2d 696 (1974):

"Thus, not accepted but rejected, was that part of the *Culp* decision finding a double jeopardy, as well as an equal protection base for granting credit for pretrial detention due to inability to post bail. In *Byrd*, as *Seals* makes clear, this court rejected the automatic offset that double jeopardy applicability would require, and 'the reasoning and result of cases [so] holding.'" [Footnotes omitted.]

## PROPOSED CONCLUSIONS OF LAW

The initial issue raised in these petitions is whether there is a constitutional right to receive credit on a prison term for the time spent in jail awaiting trial, sentencing, or delivery to prison. The petitioners suggest that there are four possible bases for the conclusion that there is such a right under the constitution: the constitutional prohibition against double jeopardy; the equal protection guarantee against being treated differently from others solely because of one's indigency or financial inability to post bail; a separate equal protection right not to be treated differently from others by the state unless the difference in treatment has a rational basis; and a due process right to treatment which is not fundamentally unfair, arbitrary, or capricious.

At the outset, this court must decide whether it is bound by the flat assertion of the Court of Appeals for the Seventh Circuit in *Culotta v. Pickett*, 506 F.2d 1061, 1063 (7th Cir. 1974), that it is "a principle of law that there is no federal constitutional right to credit for time served prior to sentence," citing *Gremillion v. Henderson*, 425 F.2d 1293 (5th Cir. 1970). I suggest that there are several reasons why this statement by the court of appeals does not preclude this court from considering the issue raised in these petitions.

First, subsequent decisions of the Fifth Circuit have interpreted *Gremillion* as holding only that there is no absolute constitutional right to credit for presentence custody. Under certain circumstances, a state prisoner may have a constitutional entitlement to such credit, as the court explained in *Jackson v. Alabama*, 530 F.2d 1231 (5th Cir. 1976) reported in part at 19 Cr.L.Rptr. 2127,

"The rule in this circuit distilled from prior decisions, as to whether a state prisoner is entitled to federal habeas corpus relief for credit on the service of his sentence for time spent in custody or detention prior to trial or sentencing is: While there is no absolute constitutional right to pre-sentence detention credit as such, where a person is held for a bailable offense and is unable to make bail due to indigency then if he is upon conviction sentenced to the statutory maximum imposable sentence for the offense he is entitled to credit for the time spent in jail prior to sentencing."

Second, in *Culotta*, the petitioner's claim for credit was based on a federal statute, 18 U.S.C. § 3568, which requires the Attorney General to give sentence credit to federal prisoners for "any days spent in custody in connection with the offense or acts for which sentence was imposed." There is nothing in the opinion to indicate that the constitutional issues were raised in the court of appeals or in the district court.

Third, petitioner Culotta was a federal prisoner who had been held by the state of New York pursuant to a state warrant for revocation of parole. Any constitutional claim which might have been raised by Culotta would have been relevant only to his state court sentencing which was not at issue in the case before the Seventh Circuit. As the court of appeals noted, prior to the imposition of his federal sentence, Culotta had been held in exclusive state custody solely in connection with his state parole violation.

It is my conclusion that *Culotta v. Pickett* would preclude this court from holding that there is an absolute constitutional right to presentence credit, but would not preclude it from determining that a constitutional right to such credit might exist under certain circumstances.

I turn then to the first of petitioners' contentions: that it is a violation of the constitutional guarantee against double jeopardy for the state to subject a convicted person to a total period of confinement which exceeds the maximum to which he could have been sentenced. The related contention is that it is also a violation of the double jeopardy guarantee for the state to subject a convicted person to a total period of confinement which exceeds the term to which he was sentenced by the trial court even when the total period of confinement does not exceed the maximum term which could have been imposed under the statute.

These contentions derive from the holding in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) that the Fifth and Fourteenth Amendment protection against double jeopardy, affording protection from multiple punishments for the same offense, requires the states to give full credit for time previously served when imposing a new sentence on a prisoner who has been reconvicted after having his first sentence set aside. In *Pearce,* the Court said,

> "We hold that the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense." *North Carolina v. Pearce, id.,* at 718–19, 89 S.Ct. at 2077.

Petitioners contend that confinement in jail, whether awaiting trial, sentencing, or delivery to prison, is "punishment already exacted" and must be credited on their prison sentences. The argument is persuasive. Time spent in a county jail, for whatever reason, is at least as restrictive and punitive as time spent in any other kind of penal institution. Indeed, it is probably the case that most county jails are more restrictive and less adequately equipped then are most state correctional facilities.[3]

Several federal district courts have held that it is a violation of the double jeopardy guarantee not to credit jail time in those instances in which the addition of the jail time to the sentence would result in a sentence which exceeds the maximum which could have been imposed. See, *e. g., Taylor v. Gray,* 375 F.Supp. 790 (E.D.Wis.1974); *Culp v. Bounds,* 325 F.Supp. 416 (W.D.N.C. 1971). At least one circuit court of appeals has also adopted this view. See, *Wilson v. State of North Carolina,* 438 F.2d 284 (4th Cir. 1971) (prisoner sentenced to life imprisonment entitled to credit toward his parole eligibility date for time spent in jail while appealing his conviction).

Of the petitioners herein, only petitioner Streeter received a sentence which was the maximum which could have been imposed upon him under state law. He was given no credit for the 87 days he spent in the county jail awaiting delivery to the state prison.

Respondents contend that petitioner Streeter's situation is distinguishable from the cases cited above, as those cases concerned periods of custody "incidental to the conviction," *Taylor v. Gray, supra,* at 793, whereas Streeter's custody was for the purpose of giving testimony in a separate proceeding and therefore, was not related to or incidental to his conviction. The fact is, however, that Streeter would have received full credit for the time spent in the La-Crosse county jail as a potential material witness had the warden agreed to receive him when he was first transported to the prison. It was the state's refusal to accept custody which led to his serving 87 days without credit. Under these circumstances, the trial court's failure to reduce his sentence by the time served in jail subjected him to punishment in excess of the maximum which could have been imposed on him by state law. In my view, this is a violation of the constitutional protection against double punishments. It is my recommendation that petitioner Streeter's petition for a writ of habeas corpus be granted insofar as it seeks an order of this court requiring respondents to credit petitioner Streeter with 87 days of time served on his indeterminate sentence of fifteen years.

If it is a violation of the prohibition against double jeopardy not to receive credit for time served on a maximum sentencing, it seems equally a violation of that

---

**3.** Note, for example, the comments of the Supreme Court concerning New York's jails and prisons in *McGinnis v. Royster,* 410 U.S. 263, at 271, 93 S.Ct. 1055, at 1060, 35 L.Ed.2d 282 (1973):

> "[A]t state prisons a serious rehabilitative program exists. County jails, on the other hand, serve primarily as detention centers. [Plaintiff] asserts they are 'neither equipped nor intended to do anything more than detain people awaiting trial and maintain no schools, run no factories and require no work from these inmates.'" Quoting from Brief for Appellants.

prohibition not to receive credit for time spent in jail on any sentence which is less than the maximum. I have found no cases which have dealt explicitly with the question of whether the prohibition against multiple punishments also requires the crediting of jail time on a sentence which is less than the maximum. Were the question entirely open, I would be persuaded that there is such a requirement. However, the question is not open, for the reason that this circuit employs the presumption that, where the sentence added to the jail time does not exceed the maximum, the sentencing judge has taken into consideration the pretrial jail time. *Holt v. United States,* 422 F.2d 822 (7th Cir. 1970). In an order entered earlier in *Brinkman v. Schubert,* 74–C–468, this court held that it was bound by *Holt* to employ the presumption, leaving for later determination the matter of the nature of the presumption, a question not addressed in the *Holt* opinion, which spoke only of a "presumption." It is arguable that the term "presumption," standing alone, should not be interpreted as anything other than "rebuttable presumption" on the ground that conclusive presumptions are not generally favored in the law. However, *Stapf v. United States,* 125 U.S.App.D.C. 100, 367 F.2d 326 (1966), cited in the *Holt* opinion, spoke in terms of a conclusive presumption:

> "Wherever it is possible, as a matter of mechanical calculation, that credit could have been given, we will conclusively presume it was given. The problems and expenditure of resources which would be caused by allowing each prisoner to attempt to demonstrate that in his particular case credit was not given, we feel, outweigh any possible unfairness."

A conclusive presumption avoids the difficult problems of proof attendant upon a claim that the sentencing judge failed to take into consideration the amount of presentence time spent in custody. On the other hand, it would be difficult to justify utilization of the presumption in the face of clear and unambiguous evidence which is a matter of record. For example, in *Monsour v. Gray,* 375 F.Supp. 786 (E.D.Wis.1973), the trial court transcript revealed that the

judge had advised the petitioner that he had no authority to give credit for pretrial custodial time and that " 'he would not be inclined to change the sentence previously imposed.' " *Id.,* at 788. In the face of such evidence, the district court held that the presumption had been defeated.

It seems reasonable to treat the presumption as the court did in *Monsour;* that is, that the presumption can be overcome only if the state court record conclusively shows that no consideration was given to presentence jail time. This avoids conjecture as to whether the sentencing judge did or did not properly consider all relevant factors in determining the sentence and it avoids the possibility that the state court judge will be called as a witness or deposed as to his past state of mind.

Petitioner Brinkman argues that in his case, the record is clear and unambiguous in its showing that the trial court judge did not credit petitioner's period of presentence incarceration. He has submitted a letter from the sentencing judge which reads in pertinent part as follows:

> "The record and file in this case indicate the defendant was convicted and sentenced on two counts of rape. The maximum sentence for rape is 30 years. If consecutive sentences were imposed, the maximum would be 60 years.
>
> Brinkman was sentenced to fifteen years on each count, to be served concurrently. I fail to see how the holding in *Byrd v. Wis.* requires consideration of defendant's motion.
>
> In any event, it will be denied."

Petitioner Brinkman argues that this letter proves that the trial court judge gave no consideration to petitioner's presentence detention for the reason that had the trial judge given such consideration, he would have said so. However, the letter can be read as easily to indicate that the reason the trial judge thought that the *Byrd* case did not require him to reconsider petitioner's motion was that he had taken the presentence custody into account at the time he sentenced petitioner and the judge's fail-

ure to say in the letter that he had given consideration to the presentence time can be attributed to judicial reluctance to comment on orders and decisions once they have been entered. The point is, the letter is not the sort of evidence which conclusively establishes the petitioner's allegation that the sentencing judge failed to give consideration to his presentence custody.

As additional rebuttal evidence, petitioner Brinkman argues that there is no statutory law now nor was there at the time he was sentenced which required the courts to consider presentence detention and that it was not until 1972 in *State v. Tew*, 54 Wis.2d 361, 195 N.W.2d 615 (1972), that the state supreme court even ruled that pretrial detention time was a proper factor for consideration by the sentencing judge. However, as early as 1962, the Model Penal Code (American Law Institute, 1962) included a recommendation for giving presentence credit on sentences. As the Wisconsin court noted in *State v. Tew, supra*, at 367, 195 N.W.2d at 615, what it was doing in the opinion was giving explicit approval to an approach which had already been adopted by many of Wisconsin's trial judges.

Considered together or separately, neither the existence of the letter from the sentencing judge nor the absence of statutory or judicial direction to sentencing judges shows conclusively that judicial consideration was not given to petitioner Brinkman's presentence custody.

The record in petitioner Harris' case is almost identical to that in petitioner Brinkman's. The record contains the sentencing transcript which reveals that petitioner Harris' trial counsel informed the court at the time of sentencing that petitioner Harris had been in custody in the county jail continuously since January 23, 1974; the transcript does not contain any reference by the court to the presentence custody. Petitioner Harris filed a motion for post-convic-

tion relief in the trial court in which he raised and discussed carefully and thoroughly the constitutional issues he is raising herein. The motion was denied by the trial court in a short written statement of denial with no indication as to whether the presentence custody had or had not been considered in sentencing.

In contrast to the ambiguities of the record in Brinkman's and Harris' cases, the record in petitioner Williams' case shows conclusively that the sentencing judge did give consideration to the time petitioner had spent in custody awaiting sentence. In the portion of the sentencing transcript submitted by petitioner Williams together with his petition, the following passage appears:

"COURT: So he's been in jail about three months——

MR. O'LEARY: Yes

COURT: ——as a result of this incident. . . . The court has already explained in convicting the defendant why the judge is satisfied that the jury verdict is amply supported by the evidence. I won't repeat myself. The Court is also aware of the fact that the defendant has spent three months in jail as a result of this incident, and will take that into consideration."

Petitioner Williams received a sentence of five years upon conviction of a crime which carries a maximum possible sentence of ten years.

It appears that petitioners Brinkman, Harris and Williams have not only failed to overcome the operable presumption but have failed to make even that showing which is required of a moving party. I would conclude that these petitioners have not succeeded in establishing that they are serving unconstitutionally invalid sentences in excess of what they would otherwise be serving.[4]

4. None of these petitioners have raised any challenge to the uncredited service of post-sentence jail time, as does petitioner Streeter. Were that issue raised in these petitions, I would be persuaded that the state's failure to

credit such time on a sentence of any length constitutes double punishment. The presumption would not operate, of course, since the sentencing judge has no way of knowing at the time of sentencing how much time the state

I turn next to petitioners' contention that failure to give credit for jail time is a violation of the equal protection guarantee of the Fourteenth Amendment. There are two related but separate aspects to this contention. The first argument is that convicted persons who remain in jail pending trial as a result of their financial inability to make bail endure longer periods of confinement than do convicted persons who are financially able to post bail and who are free pending trial and that this distinction in treatment is an invidious discrimination based on wealth, which can be sustained only by showing that there is a compelling state interest in the distinction.

The second argument is that convicted persons who remain in jail prior to sentencing, for whatever reason, endure longer periods of confinement than do convicted persons who are free on bond pending trial and that the distinction in treatment of these two classes bears no rational relationship to any legitimate state purpose.

In my opinion, neither of these arguments is available to petitioners Brinkman, Harris, and Williams who received less than the maximum possible sentence, since they have not overcome the presumption that their sentences were determined after due consideration of their presentence custody, and the wealth distinction argument is not available to petitioner Streeter, who received a maximum sentence, since there is no allegation in his petition that his post-sentence detention was the result of his financial inability to make bail. However, both arguments merit discussion in the event the court decides either that the presumption does not operate against petitioners Brinkman, Harris, and Williams that their jail custody has been considered in their sentencing, or that the presumption has been rebutted as to any of them.

The starting point in any equal protection analysis is the delineation of two classes: the disfavored and the favored. *San Antonio School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

If the classes with which we are concerned are categorized as (a) those convicted persons in custody pending trial, sentencing, or delivery to prison and (b) those convicted persons not in custody prior to imprisonment, the delineation is obvious and precise. Petitioners contend that an equally precise delineation can be made on the basis of wealth: an arrested person's ability or inability to gain his release on bail is directly related to his wealth or lack of wealth. They offer no evidence, statistical or otherwise, to support their argument and I am not persuaded of its force.

At least since the enactment of bail reform legislation by the federal government and by the state of Wisconsin, factors other than the ability to pay can determine whether an accused person is released on bail.[5] The introduction of these factors destroys whatever direct correlation may have existed formerly between wealth and release on bail.

Because the factors which support release on personal recognizance or signature bond include such things as length of employment and residence in the community, and the existence of family ties to the community, it is probably true that more functionally indigent persons remain in jail pending trial than do relatively affluent persons; the bail system undoubtedly falls with unequal weight on persons according to their economic status. However, "[T]he basic

will require to complete its administrative arrangements for taking custody of the convicted person, so that it cannot be said that he took such time into consideration.

5. The reform legislation provides for release on personal recognizance, or on a custody arrangement, or on execution of an unsecured bond. Requiring the posting of a secured bond is permissible only if the judicial officer determines that no lesser condition will ensure the defendant's appearance in court. That deter-

mination is to be made upon consideration of a number of factors: the length of the defendant's residence in the community; his employment or family ties to the community; his character and mental condition; his record of appearance at prior court proceedings; the nature and circumstances of the offense charged; and the weight of evidence against him. 18 U.S.C. § 3146(b); Wis.Stats. § 969.01; *Whitty v. State*, 34 Wis.2d 278, 149 N.W.2d 557 (1967).

concern of the Equal Protection Clause is with state legislation whose purpose or effect is to create discrete and objectively identifiable classes." *San Antonio School District v. Rodriquez, supra,* at 60, 93 S.Ct. at 1310, Stewart, J., concurring. In every case in which the Supreme Court has found a wealth-based distinction between two classes of people, the indigency of the members of the disfavored class has been the sole cause of their lack of opportunity to enjoy a desired benefit, and the affluence of the members of the favored class has guaranteed them the enjoyment of the benefit.[6]

For example, in *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the disfavored class was defined as all those convicted persons who were unable to afford the transcripts. In *Harper v. Virginia Bd. of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) the classes could be delineated as those who could pay a poll tax of $1.50 as a condition of voting, and those who could not.[7]

In any event, there seems to be no persuasive reason to pursue the wealth distinction argument independently of the more straightforward equal protection argument unless a finding that the two classes are distinguishable on the basis of wealth alone would bring into play the compelling state interest test.[8] Petitioners seem to think that this is the case, but I find it more doubtful. The cases which have treated classifications based on indigency as "suspect," appear to be limited in their scope to situations in which there was a "fundamental interest" at stake, such as the right to vote or the right of access to the courts. See *e.g., Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *McDonald v. Board of Election Commissioners,* 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); *Harper v. Virginia Bd. of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

It is significant that in *Royster v. McGinnis,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973), the Court gave no consideration to the possibility that there might be a wealth-based distinction between persons kept in custody pending trial and persons released on bail. In *Royster,* state prisoners challenged a provision of the New York correction law which denied state prisoners "good time" credit for their presentence incarceration in county jails, contending that it was a denial of equal protection to disallow such credit to them "while permitting credit up to the full period of ultimate incarceration for state prisoners who were released on bail prior to sentencing." *Id.,* at 265, 93 S.Ct. at 1057. Although the dissent argued that the Court dealt with a deepseated inequity and an invidious discrimination between "those rich enough or influential enough to get bail or release on personal recognizance" and "those without the means to buy a bail bond or the influence or prestige that will give release on personal recognizance," *Id.,* at 283, 93 S.Ct. at 1066, Douglas, J., dissenting, the Court held that its own inquiry was limited to determining whether the classification created by the state of New York rationally furthered some legitimate, articulated state purpose, implicitly finding that there was no "suspect classification" at issue.

Since the Court did not discuss the classifications in any detail, it is not clear whether its holding followed from its unwillingness to characterize as wealth-based the distinction between those arrested persons able to post bail and those unable to do so

---

6. And, as will be noted later, the benefit at issue was the exercise of a right deemed to be fundamental.

7. The one exception to this holding is *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), a case which appears to have been limited in its effect to its own facts.

8. Although the two-tier equal protection model is the subject of criticism, see, *e.g., Mass. Bd. of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), Marshall, J., dissenting, the district courts are bound to adhere to it so long as the Supreme Court employs it as its mode of analysis in equal protection cases.

or from the Court's reluctance to treat wealth-related distinctions as suspect.[9] Whatever the reasoning, the holding is clear that it is the rational basis test which is to be applied to legislation affecting bailed and non-bailed persons.

Nor is the significance of *Royster* limited to its articulation of the proper standard of judicial review to be applied. Of equal significance is the Court's willingness to accept the state's proffered justifications for treating jailed and non-jailed offenders differently. The lower court, hearing the case as a three-judge court, had held that there was no rational basis for distinguishing between jailed and non-jailed defendants in the awarding of good-time credit. *Royster v. McGinnis*, 332 F.Supp. 973 (S.D. N.Y.1971). The lower court analyzed the objectives set out by the state: that state prisons are intended to have rehabilitation as their purpose and are built and equipped to serve this purpose, whereas county jails are primarily detention facilities, and the granting of good-time credit takes into account a prisoner's rehabilitative performance; the state prisons are designed to permit the observation and evaluation of a prisoner's conduct and performance by state officials, whereas an inmate in a county jail is neither under the supervision of the state nor is any opportunity available for state officials to observe his conduct; and acceleration of a prisoner's minimum parole date might prevent state officials from having an adequate opportunity to evaluate a prisoner's participation in rehabilitative programs.

The lower court found these stated objectives undermined by the fact that New York did grant good-time credit for presentence jail time to county penitentiary inmates and also to state prisoners for the purpose of calculating their statutory release dates (as opposed to the minimum parole date). The district court found that the rehabilitative purpose for the granting of good-time credit was not the overriding one, but that the "legislature's primary aim in enacting the good time statute was to foster and insure the maintenance of prison discipline." 332 F.Supp. 973, 978.

On appeal, the Supreme Court found that there were legitimate reasons why the legislature might have treated differently good time for county penitentiary inmates, as well as good time credit for statutory release date determinations. The Court held also that the lower court was not authorized to

"pick and choose among legitimate legislative aims to decide which is primary and which subordinate. Rather, legislative solutions must be respected if the 'distinctions drawn have some basis in practical experience,' *South Carolina v. Katzenbach*, 383 U.S. 301, 331 [86 S.Ct. 803, 820, 15 L.Ed.2d 769] (1966), or if some legitimate state interest is advanced, *Dandridge v. Williams*, 397 U.S. [471], at 486 [90 S.Ct. 1153, 1162, 25 L.Ed.2d 491.] So long as the state purpose upholding a statutory class is legitimate and nonillusory, its lack of primacy is not disqualifying." 410 U.S. 263, 276, 93 S.Ct. 1055, 1062, 35 L.Ed.2d 282.

The difference in approach by the two courts indicates a greater willingness by the Supreme Court to tolerate "state experimental classifications in a practical and troublesome area," 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282.

Although respondents have made no attempt on the record so far to show that the state has any valid governmental objective whatsoever in prohibiting the crediting of jail time, and although the argument is persuasive that there is no apparent ration-

---

**9.** In the lower, three-judge court opinion, the court noted that it had not relied on the indigency of the plaintiffs or their class members in holding that the New York good time statute created an invidious classification.

"The invidious discrimination here is not necessarily between the rich and the poor, but rather between the jailed and the non-jailed. Of course, in reality, the weight of pre-sentence incarceration falls most heavily on the indigent, but it is certainly not reserved for him alone." *Royster v. McGinnis*, 332 F.Supp. 973, 980, fn. 14 (S.D.N.Y.1971).

al basis for determining the total length of a sentence by the place of confinement, I think that this court is precluded by *Royster* from holding flatly on this record that the failure to give prison credit for jail time does not rationally further a legitimate state purpose. It is not unreasonable to assume that the state will be able to show that the rehabilitation of offenders is a valid objective of sentencing; that the state has built and equipped its prison system to provide opportunities for the rehabilitation of its inmates and that the county jails were not designed to provide the same opportunities; and that the failure to give credit for time spent in the county jails reflects the state's concern that a felony sentence should be utilized as an opportunity to rehabilitate the offender.

I turn finally to petitioners' contention that the failure to credit jail time is a violation of their right to due process. Petitioners have not developed this argument, but I assume that it is based upon a claim of violation of their constitutional right of substantive due process: that it is an arbitrary, fundamentally unfair act of the state to give some convicted persons credit for all time served (because they are free on bail pending trial and do not have to serve uncredited time in jail) and to deny that credit to other convicted persons.

In discussing a claim based on substantive due process in the context of a teacher-firing case, the Court of Appeals for the Seventh Circuit said,

"The claim that a person is entitled to 'substantive due process' means, as we understand the concept, that state action which deprives him of life, liberty, or property must have a rational basis—that is to say, the reason for the deprivation may not be so inadequate that the judiciary will characterize it as 'arbitrary.'" *Jeffries v. Turkey Run Consolidated School District*, 492 F.2d 1, 3–4 (7th Cir. 1974)

**10.** Of course, the underlying state action of requiring certain accused persons to remain in custody pending trial while releasing others is constitutionally permissible, even if the effect

In other words, state action for which a rational basis can be shown is not arbitrary within the meaning of the due process clause.

If, as the Supreme Court has held in *Royster*, it is not wholly irrational for a state to have as an objective the rehabilitation of felony offenders, and to set up a penal system which provides rehabilitative opportunities only or primarily in the state-run institutions, it follows from this that it is not irrational, and therefore not arbitrary, to confine the crediting of time served on a sentence to that spent in the state institutions.[10] I would conclude that on this record petitioners have not shown that their due process rights have been violated by the courts' failure to credit jail time on their prison sentences.

### RECOMMENDATION

It is respectfully recommended that this court

1) adopt as its own the Proposed Findings of Fact set out above;

2) find and conclude that the petitioners have exhausted their available state court remedies within the meaning of 28 U.S.C. § 2254;

3) adopt as its own the Proposed Conclusions of Law set out above;

4) grant petitioner Streeter's application for a writ of habeas corpus insofar as it seeks an order of this court requiring respondents Carballo and Gray to credit petitioner with 87 days of time served on his indeterminate sentence of fifteen years; and

5) dismiss the petitions for writs of habeas corpus of petitioners Brinkman, Harris, and Williams, on the ground that these petitioners have failed to show that they are in state custody in violation of their rights under the United States Constitution.

tends to discriminate against poorer and less influential defendants. *Royster v. McGinnis*, 332 F.Supp. 973, 977 (S.D.N.Y.1971); *Morris v. Crumlish*, 239 F.Supp. 498 (E.D.Pa.1965).

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

I have examined the record in each of these cases. I have considered the report and recommendation of the Honorable Barbara B. Crabb, United States Magistrate, filed August 11, 1976, and the responses thereto filed by the respondents and by petitioners Brinkman and Williams.

## FACTS

I find as fact those facts set forth by the Magistrate in her proposed findings of fact.

## EXHAUSTION OF STATE COURT REMEDIES

■ I adopt as my own the findings and conclusions set forth in the report of the Magistrate with respect to exhaustion of state court remedies.

## CONCLUSIONS OF LAW

Except as otherwise stated hereinafter, I adopt as my own the conclusions of law set forth in the report of the Magistrate under the heading "Proposed Conclusions of Law."

■ Subsequent to the filing of the Magistrate's report and recommendation, the court of appeals for this circuit decided *Faye v. Gray,* 541 F.2d 665 (7 Cir. 1976). From *Faye* it is clear that the Magistrate was correct in her opinion that the law of this circuit does not preclude me from deciding that under certain circumstances, the federal constitution requires that there be credited against a term of imprisonment certain periods of confinement which have occurred prior to imprisonment. From *Faye,* it is now clear in this circuit that the Fifth Amendment protection against double jeopardy requires that in one set of circumstances, but only in that set of circumstances, such credit be given. That set of circumstances is one in which the preimprisonment period of confinement plus the period of imprisonment specified in the sentence exceeds the statutory maximum for the offense. Under *Faye,* neither petitioner

Brinkman, petitioner Williams, nor petitioner Harris has shown that his protection against double jeopardy has been violated, but petitioner Streeter has shown that he is entitled by the Fifth Amendment to a credit of 87 days.

Acting as she did prior to *Faye,* the Magistrate discussed in the context of double jeopardy the question of a presumption that the sentencing judge has taken into consideration the period of presentence confinement. In light of *Faye,* the question of such a presumption is irrelevant to double jeopardy.

■ With respect to petitioners Brinkman, Williams, and Harris, there remain the contentions that the failure to credit them with the periods of their preimprisonment confinement violates the equal protection clause and the due process clause of the Fourteenth Amendment. Of course, unless the petitioners can make an adequate showing that their respective periods of preimprisonment confinement have not been "credited" to them, they lack standing to raise these constitutional questions. They have succeeded in showing that no such credits have been applied administratively to the sentences imposed by the sentencing courts. But if they were "credited" with the preimprisonment time by the sentencing courts themselves, petitioners also lack standing to raise their equal protection and due process contentions. It is clear from the record in Williams' case that such a credit was given by the sentencing court, and I hold that petitioner Williams lacks standing to raise the equal protection and due process claims.

In *Faye,* the court of appeals considered whether, in a habeas proceeding raising a federal constitutional claim, it should be presumed that a sentencing court has credited the preimprisonment time and, if so, what the nature of that presumption should be. It declined to hold that any such presumption should be indulged in, but necessary to its decision in *Faye* was a holding that if such a presumption is applied, it is a rebuttable presumption. On the facts of *Faye,* it held that any such presumption had

been "thoroughly" and "clearly" rebutted by the record in the state court. From the opinion in *Faye,* it appears that neither the district court nor the court of appeals reached the question whether, under any circumstances, the crediting of preimprisonment time is required by the equal protection clause (or the due process clause, not referred to in *Faye*).

█ For the reasons set forth in the report and recommendation of the Magistrate in the present case, I hold that in a habeas proceeding raising a federal constitutional claim, in which the period of preimprisonment confinement plus the period of imprisonment specified in the sentence does not exceed the statutory maximum for the offense, it is to be presumed that in deciding upon the sentence, the sentencing court credited the defendant (petitioner) with the preimprisonment time, and also I hold that this presumption can be overcome only if the state court record thoroughly or clearly rebuts it (the Magistrate had used the term "conclusively"). Also for reasons set forth by the Magistrate, I conclude that petitioner Harris has failed to overcome the presumption and, therefore, lacks standing to raise his equal protection and due process claims.

However, the state court record in the Brinkman case is strikingly similar to that in *Faye* (which also involved a Wisconsin state court), and I am obliged to hold that the Brinkman record thoroughly and clearly overcomes the presumption and that Brinkman does enjoy standing to raise his equal protection and due process claims.

█ In her report and recommendation, the Magistrate expressed doubts whether when classifications based on indigency are challenged under the equal protection clause, there is brought into play the compelling state interest test unless there is a " 'fundamental interest' at stake, such as the right to vote or the right of access to the courts." I expressly refrain from adopting these comments as my own. With this exception, however, I adopt as my own her conclusions of law with respect to the applicability of the equal protection clause

and the due process clause to the Brinkman petition. As was the Magistrate, I am impressed particularly by the force of *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973) and its implications. Petitioner has undertaken in several ways to challenge the force of *McGinnis,* including an assertion that the individual interest at stake here is the fundamental interest in liberty (from physical confinement), whereas in *McGinnis* the individual interest was a less important interest in an earlier rather than later parole hearing. But the significance of the parole hearing lies in the chance for liberty implicit in it. Neither this contention by petitioner, nor his others, seem to me to avoid the impact of *McGinnis.*

## ORDER

It is hereby ordered that:

1. In 76–C–107, the petition for habeas corpus is granted in that respondents Carballo and Gray are ordered to credit petitioner Streeter with 87 days on his sentence.

2. The petitions of Harris in 76–C–293 and Williams in 76–C–247 are dismissed on their merits with respect to their claim that they have been placed in double jeopardy, and for lack of standing with respect to their claims that they have been denied equal protection and due process.

3. The petition of Brinkman in 74–C–468 is dismissed on its merits.

## ON BRINKMAN MOTION TO VACATE ORDER

On October 1, 1976, I entered an order herein dismissing on its merits this petition for habeas corpus. On October 8, 1976, petitioner moved for an order vacating the October 1, 1976, order on the ground that it is contrary to the law of this circuit as announced in *Faye v. Gray,* 541 F.2d 665, (7th Cir. 1976). Petitioner contends that in *Faye,* the court of appeals implicitly adopted the view that in a case in which the preimprisonment period of confinement plus the period of imprisonment specified in the sentence does not exceed the statutory

maximum for the offense and in which the preimprisonment period of confinement is caused by indigency, the equal protection clause is violated unless credit for the preimprisonment confinement is granted. Relying upon the language of the unpublished opinion of the United States District Court for the Eastern District of Wisconsin in *Faye* (case no. 75–C–328, November 11, 1975) and upon language included in the brief of the respondent warden on the appeal in *Faye*,[1] counsel for the petitioner argues impressively that the opinion and order of the court of appeals in *Faye* must be construed in the manner he suggests. Also, counsel for the respondent superintendent agrees with petitioner's construction of the opinion and order of the court of appeals in *Faye*, and joins in petitioner's motion for reconsideration of my order of October 1, 1976.

■ On October 27, 1976, petitioner filed a notice of appeal from the October 1, 1976, order dismissing the petition (as well as a companion order on October 1, 1976, denying a motion for an evidentiary hearing). Under Rule 22(b) of the Federal Rules of Appellate Procedure, that appeal may not proceed unless a district or a circuit judge issues a certificate of probable cause. It appears that no such certificate has as yet been issued by a circuit judge and I have issued none. Therefore, it appears that I continue to be free to act in this case, and specifically to act upon petitioner's motion for an order vacating the October 1, 1976, order dismissing the petition.

Despite the force of the views expressed by counsel for the petitioner and for the respondent herein, I am unable to accept their construction of the opinion and order of the court of appeals in *Faye*.

In that opinion the court of appeals referred to two groups of precedents. One was a group of precedents for the proposition that it is a denial of equal protection not to credit "presentence confinement re-

sulting from inability to post bond" where the period of presentence confinement together with the sentence imposed exceeds the statutory maximum. The second was a group of precedents for the proposition that it is a denial of equal protection not to credit "presentence confinement due to a defendant's indigency" regardless of whether the aggregate of the presentence confinement and the sentence exceed the statutory maximum. The court expressed no opinion whether it embraced the latter rule. Rather, with respect to the latter group of precedents, the court proceeded to discuss the significance of a presumption in cases in which the aggregate period of confinement does not exceed the statutory maximum, namely, a presumption that the sentencing court has in fact credited "the presentence time."

In the course of this discussion of the presumption, the court raised but expressly refrained from answering the question whether the presumption should operate where the claim for a credit against sentence "is constitutionally rather than statutorily based." However, making an assumption that the presumption should be operative when the claim for credit is constitutionally based, the court held, although only implicitly, that such a presumption is rebuttable. It proceeded to examine the facts in *Faye*, decided that "any presumption [had been] . . . clearly rebutted by the sentencing judge's own words," and "reversed" the district court "so far as its holding that the presumption was not rebutted with regard to the period of petitioner's presentence confinement caused by his financial inability to post bond." The opinion ends cryptically: "In all other respects, the district court is affirmed." The district court had held that the presumption was operative when the claim for credit is constitutionally based, and that the presumption had not been overcome in the *Faye* case. Its holding was that Faye had received the credit to which he was entitled.

---

1. The pertinent excerpt from said brief is: "[R]espondent concedes, as the trial court held, that credit for such period of [pretrial jail detention due to indigency] can, upon a proper showing, entitle a prisoner to sentencing credit on equal protection grounds. The only relevant question, however, is whether on the facts of this case, petitioner was so entitled."

This very holding was reversed by the court of appeals which held that Faye had not been credited with his "presentence confinement period due to [Faye's] inability to post bond."

I agree that before it employed the presumption to decide that Faye had received the credit to which he was entitled, the district court had strongly implied that if Faye had not been credited for "preconviction confinement . . . attributable to [his] financial inability to make bond," the equal protection clause would have been violated. However, this is no more than a strong implication in the district court opinion, and it is clouded by the district court's comment that because the presumption established that credit for "preconviction custodial time" had been given, it was unnecessary to resolve the question whether the equal protection clause requires crediting "presentence custodial time for the purpose of a presentence examination. . . . " I cannot discern whether the district court was deliberately distinguishing between preconviction detention and presentence detention, or between presentence detention for the purpose of presentence examination and presentence detention for some other purpose.

From all this, I consider it unlikely that the court of appeals intended to pronounce a rule on the difficult questions concerning the merits of equal protection claims for credit for presentence confinement. Rather, I conclude that it has refrained from acting on the merits, and that I am thus uninhibited in arriving at my own decision on those merits. My views on the merits are set forth in my opinion and order of October 1, 1976.

If the petitioner desires to serve and file a notice of appeal from the order entered below, I will promptly execute a certificate of probable cause to permit him to appeal it as well as both orders of October 1, 1976.

### Order

It is ordered that petitioner's motion for an order vacating the orders entered herein October 1, 1976, is denied.